ROOT GLASS COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 104255.   Promulgated January 21, 1943.

*T. C. Edwards* (*an officer*), for the petitioner.
*Edward C. Adams, Esq.*, for the respondent.

#### OPINION.

TURNER, *Judge:* The Commissioner determined a deficiency of $3,922.22 in the petitioner's personal holding company surtax for the fiscal year ended July 31, 1936.   The only issue presented is whether in determining the petitioner's undistributed adjusted net income for the purpose of the personal holding company surtax the respondent erred in not allowing as deductions additional income and excess profits taxes for the fiscal years ended July 31, 1932, and July 31, 1933, paid by the petitioner during its taxable year ended July 31, 1936.   The facts were stipulated and are found as stipulated.

The petitioner is an Indiana corporation, with its principal office at Terre Haute.   For the taxable year ended July 31, 1936, the petitioner was a personal holding company within the definition of the statute and filed its personal holding company return for said year with the collector at Indianapolis.   Its books were kept and all of its tax returns were filed on the accrual basis.

Prior to the close of the petitioner's fiscal year 1932 it carried on its books an account designated "Reserve for Federal Taxes and Contingencies," in which the credit balance was $100,000.   This reserve was set up to take care of estimated additional Federal taxes for prior years.   Within the fiscal year 1932 the account was adjusted by a charge thereto and the restoration to surplus of $50,000, leaving a balance of $50,000 in said reserve account at the close of the year.   With the exception that the caption of the account was changed to include the phrase "Applicable to Period Prior to August 1, 1932," the account remained unchanged throughout the fiscal year 1933.   In

the report on their audit of the petitioner's books for the fiscal year 1933 the petitioner's accountants expressed the opinion that the credit balance of $50,000 in the reserve account was ample to provide for such assessment of Federal taxes as might possibly be assessed against the petitioner as of July 31, 1933. During the fiscal year ended July 31, 1934, the petitioner paid additional income taxes totaling $32,240.20 for the fiscal years 1927 through 1931, which were charged to the reserve account, leaving a credit balance therein of $17,759.88 on July 31, 1934. As of July 31, 1934, the petitioner set up on its books a new account, designated "Federal Taxes and Contingencies (Reserve) (Applicable to Period Subsequent to August 1, 1932)," with a credit balance of $75,000, making a charge to surplus of a like amount. The foregoing two reserve accounts remained unchanged until July 31, 1935, when the petitioner set up on its books a new account, designated "Reserve for Federal Taxes," to which it transferred the credit balances of $17,759 88 and $75,000 respectively in the said two accounts and closed them. As of the same date the petitioner also credited the "Reserve for Federal Taxes" with $72,388.08 charging surplus with a like amount, bringing the total credit balance of the reserve to $165,147.96. The explanation given in the last entry was that it was made to adjust the reserve to the total amount of taxes recommended by the Bureau in the amount of $7,269.22 and $157,878.74 for the petitioner's fiscal years 1932 and 1933, respectively. On February 25, 1936, the petitioner executed a consent to the assessment against it of an income tax of $7,269.22 for the fiscal year 1932 and an income tax of $53,734.52 and an excess profits tax of $789.83 for the fiscal year 1933, or a total of $61,793.57 for both years, and on April 10, 1936, it made payment of such taxes. Said payment was charged to the "Reserve for Federal Taxes," reducing the credit balance thereof to $103,354.39, which was transferred to surplus on July 31, 1936, and the reserve account closed.

The above mentioned reserve accounts were shown in the petitioner's financial statements, annual and otherwise, for the respective periods. At the annual meetings of the stockholders held in September following the close of each of the fiscal years 1933 through 1936 statements of the petitioner's earnings for said years and of its financial condition at close of the years were presented, discussed, approved, and ordered placed in the files of the corporation.

In computing adjusted net income as reported on its personal holding company return for the fiscal year 1936, the petitioner deducted the $61,793.57 paid on April 10, 1936, on account of income and excess profits taxes for the fiscal years 1932 and 1933. The deductions allowable in computing undistributed adjusted net income exceeded the adjusted net income reported, and no undistributed adjusted net income was shown on the return. The respondent dis-

allowed the deduction of $61,793.57 for income and excess profits taxes paid during the year and determined undistributed adjusted net income for the year in the amount of $13,074.07 and a deficiency in personal holding company surtax of $3,920.22.

The surtax on a personal holding company is imposed on "undistributed adjusted net income." In computing undistributed adjusted net income for 1936, "Amounts used or set aside to retire indebtedness incurred prior to January 1, 1934, if such amounts are reasonable with reference to the size and terms of such indebtedness," are deductible from adjusted net income. Sec. 351 (b) (2) (B), Revenue Act of 1936. Beginning with the calendar year 1937, however, the section of the statute just cited was amended so as to provide that as a prerequisite to such deduction the amount set aside to pay such indebtedness must have been *"irrevocably* set aside." Sec. 1, Revenue Act of 1937, amending Title 1 A of the Revenue Act of 1936. In computing adjusted net income, "Federal income, war-profits, and excess-profits taxes paid or accrued during the taxable year to the extent not allowed as a deduction by section 23 * * *" are deductible. Sec. 351 (b) (3) (A), Revenue Act of 1936.

There is no question that the additional income and excess profits taxes paid during the taxable year for the fiscal years 1932 and 1933 constituted indebtedness incurred prior to January 1, 1934, or that the reserve was a reasonable reserve to the extent of the taxes actually paid. The respondent contends that the setting up of the reserve in a prior taxable year was such a setting aside of the amount later paid, that the deduction thereof was allowable in the year in which the amount was so set aside, and is not therefore allowable in the later year when paid. The petitioner contends that at no time prior to the fiscal year 1936 did it set aside, within the meaning of the statute, any amount to retire the indebtedness and that the creation of bookkeeping reserves which were alterable at will and were in fact altered from time to time was not such a setting aside of the amount in question as was required by the statute. The respondent does not contend that any funds were physically set aside or that any specific money was earmarked for the payment of the taxes in question. Accordingly, such setting aside as was done consisted of the setting up of the reserve on the petitioner's books and the charge or charges against surplus of the amounts so carried into the reserve. Financial statements showing the reserves previously described herein were presented at the annual meetings of the stockholders of the petitioner following the close of each of the fiscal years 1933 through 1936, and were discussed, approved, and ordered placed in the files of the corporation.

The argument of the petitioner seeks to implant the word "irrevocably" into the statute applicable for the year 1936, and in fact it

is argued on brief that the 1937 amendment is merely a clarifying amendment of existing law. With that argument, we are unable to agree. See the discussion in *Securities Co. of New Jersey*, 45 B. T. A. 1048. We further note that Congress, in prescribing the credits allowable against the income on which the surtax on undistributed profits was imposed by section 14 of the Revenue Act of 1936, took pains to limit the credit there to amounts required to be "irrevocably set aside." See section 26 (c) (2) of the Revenue Act of 1936. In section 351 (b) (2) (B) of the same act, the section here under consideration, the word "irrevocably" was not used, and we may not impute to Congress the intent to use it. The setting up of the reserve and the charge to surplus was, in our opinion a setting aside of an amount to cover the income and excess profits taxes which had been incurred by the petitioner for the fiscal years 1932 and 1933. By that act the petitioner formally and in good faith set aside or excluded from its surplus available for distribution as dividends the amount later required and actually used to meet the liability in question. By so doing, it was entitled to a deduction of the said amount for the year in which so set aside, see *Floyd, Inc.*, 43 B. T. A. 101, and it is not entitled to a second deduction of the same item in a later year when the tax was paid. Art. 351-4, Regulations 94. See and compare *Spokane Dry Goods Co.* v. *Commissioner*, 125 Fed. (2d) 865. *Ilfeld Co.* v. *Hernandez*, 292 U. S. 62, and *Comar Oil Co.* v. *Helvering*, 107 Fed. (2d) 709.

*Decision will be entered for the respondent.*