KERSHAW MANUFACTURING COMPANY, Inc., Petitioner,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 19464.

United States Court of Appeals
Fifth Circuit.

Jan. 30, 1963.

in the years paid and not in the years earned. The Commissioner does not deny that the bonuses were properly deductible as "a reasonable allowance for salaries or other compensation for personal services actually rendered;"[1] but urges that the bonuses were not accrued and thus were not deductible in the year earned, but rather in the next year when paid. The Tax Court agreed, and the taxpayer argues that the findings and conclusions of the Tax Court are erroneous. Bonuses earned in the years 1955, 1956 and 1957 (and paid in 1956, 1957 and 1958) are in dispute here.

Taxpayer Kershaw Manufacturing Company, Inc. is an Alabama corporation engaged in the business of manufacturing machines used by railroad companies in maintaining tracks and roadbeds. It keeps its books and files its income tax returns on the accrual basis and its fiscal year ends April 30th.

In 1953, taxpayer decided to issue yearly bonuses to employees on a profit sharing basis. Bonuses totaling $25,000 were paid for the year ending April 30, 1953, and taxpayer, by its president, Royce Kershaw, told the employees that the company had experienced a very good year and that the bonuses were in recognition of the employees' help in building the company and making the profits. He told them that the company would continue to pay bonuses as long as it made a profit. New employees were told when hired that they would receive a bonus, but could not be told exactly what their bonus would be. They were informed that the company had a policy of paying twenty-five to thirty-five percent of its profits to employees and particularly to key employees. The bonus policy was discussed at meetings and company parties. It was stressed that the bonus was dependent upon profits and would total twenty-five to thirty-five percent of profits.

In February or March of 1954, the president and executive vice-president of taxpayer corporation began making up

Fred S. Ball, Jr., Montgomery, Ala. H. Cecil Kilpatrick, Washington, D. C., for petitioner.

Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Atty., Dept. of Justice, Washington, D. C., Crane C. Hauser, Chief Counsel, Glen E. Hardy, Atty., I.R.S., Washington, D. C., I. Henry Kutz, Atty., Harold M. Seidel, Atty., Dept. of Justice, Washington, D. C., for respondent.

Before RIVES, CAMERON and BROWN, Circuit Judges.

CAMERON, Circuit Judge.

This is a petition to review the Tax Court's holding that certain bonuses paid by the corporate taxpayer to its employees were deductible by the taxpayer

1. 26 U.S.C.A. § 162(a).

lists of the employees who were eligible for a bonus.[2] They had in hand the operating statements for each month and the amount each employee received as a bonus the year before; and, based on their estimate of what profits would be made, they had set down beside each employee's name a tentative figure as his bonus. In making the allocation among the employees, the taxpayer took into consideration such matters as the length of service, the bonus paid the preceding year, the salary or wages and the employee's willingness to work. These lists were adjusted and, according to Mr. Kershaw's testimony, made final about the first of April.

The bonus payments for 1954 were paid May 1, 1954—the first day of the next fiscal year—but bonuses for work done in the fiscal years 1955, 1956 and 1957 were not paid until several months after the close of those fiscal years. However, taxpayer's president testified that the same procedure was taken each year in arriving at the bonuses to be paid and the final amounts to be paid each employee was definitely ascertained by April 30th each year, even though payments were delayed for the fiscal years 1955, 1956 and 1957.

The Tax Court found that the payments made May 1, 1954 were accrued during the 1954 fiscal year and deductible in that year. But it found that payments for the fiscal year 1955 were not ascertained or ascertainable until after the close of the fiscal year and were thus deductible in 1956 rather than 1955. Like findings were made for the years 1956 and 1957, i. e., bonuses for work done in 1956 were ascertained in and deductible for 1957, and bonuses for 1957 ascertained in and deductible for 1958.

The taxpayer contends that the definite amount of bonus to be paid each employee was fixed before April 30 of each year, that the total bonus to be paid was accrued and entered on the books prior to the close of the fiscal years and that the "all events" test [3] had been met. Taxpayer relies here on the stipulation of facts entered into by the parties:

"4. Prior to the end of the fiscal years ended April 30, 1955, April 30, 1956, and April 30, 1957, petitioner set up and accrued on its books certain amounts as a bonus for its employees. These amounts were not paid to the employees in the year of accrual. The amounts accrued were as follows: [amounts set out]."

The Commissioner contends that though the taxpayer now argues that the stipulation meant that the liabilities were ascertained and accrued on the books before April 30 of each year, it did not take that position in the trial below. The Commissioner argues that the "stipulation clearly provided, and was intended to provide, only that taxpayer entered and accrued on its books the amount of the bonuses to be paid that year before the books were closed for the year." He continues, "If the stipulation settled [the dates of final accrual], it would have been unnecessary for taxpayer to have made such proof [as to when the amounts were finally settled]."

■ We find there is substantial evidence in the record as a whole, including a consideration of the facts stipulated, to sustain the Tax Court's finding that, as a matter of fact, the amounts of bonuses paid for work done in 1955, 1956 and 1957 were not finally ascertained or ascertainable until after the end of each fiscal year.[4] We think that it is

2. Only employees who had been employed as long as six months were eligible.

3. "It has long been held that in order truly to reflect the income of a given year, all the events must occur in that year which fix the amount and the fact of the taxpayer's liability for items of indebtedness deducted though not paid * * *." Dixie Pine Products Co. v.

Commissioner, 1944, 320 U.S. 516, 519, 64 S.Ct. 364, 88 L.Ed. 270.

4. Mr. Kershaw, president of taxpayer corporation, on direct examination, testified as follows:
"In each of the fiscal years 1955, 1956 and 1957, the amount of the bonuses was set up on our books as accrued liability. They were included in the income tax re-

plain that the amount of bonuses could not be finally ascertained until after the books were otherwise balanced and closed, and that this could not be done until after the end of the year.

We do not, however, agree with the Tax Court's legal conclusion that no part of the bonuses could be deducted in the year earned. The Tax Court recognized that the taxpayer was obligated to pay at least twenty-five percent of its profits to the employees as bonuses, but that "There is nothing in the bonus plan, as set up, requiring that the amount set opposite each employee's name be paid to him * * *" And "It is clear that there was no fixed formula for determining the bonuses * * *" Concluding that "Where the amount of the bonus can vary within the discretion of petitioner's president, the liability is not sufficiently fixed during the taxable year to permit an accrual. Until a definite amount had been paid over to the employees in the year following the year of accrual [sic], the petitioner had no obligation to pay a bonus in a specified amount which was ascertainable with sufficient certainty to be properly accrued."

█ We think the Tax Court was unnecessarily concerned with the fact that no employee's particular share of the

bonus was specifically ascertained on or before April 30. We hold that it is enough that the taxpayer, on April 30, was obligated to pay to the employees twenty-five percent of the profits for that year and that the amount of bonuses due was "accrued" as of the end of the year to that extent and deductible to that extent.[5]

█ If the taxpayer's liability is ascertainable by a fixed standard as of the close of the year (here, at least twenty-five percent of profits), the liability was accrued for tax purposes even though the computations had not yet been made. See United States v. Anderson, 269 U.S. 422, 46 S.Ct. 131, 70 L.Ed. 347. We do not doubt that, as of midnight, April 30, of 1955, 1956 and 1957 the employees as a group had a fixed and enforceable claim to at least twenty-five percent of whatever profits were made, and that taxpayer's obligation to pay had then accrued. We think it immaterial that, from the taxpayer-employer's point of view, each one's share of the total had not then been finally settled. We hold that, as far as taxpayer was concerned, bonuses of at least twenty-five percent of profits were owed and that it follows that taxpayer could be made to pay them. That is all that is necessary[6] for tax purposes.

---

turns to show that they were accrued liabilities for those years. They would have to be accrued because you can't close business one day and make payment on the next day because you have got to balance your books and make your statements up before you know the exact amount to the penny of your earnings. So there is always a little lag there. When the books were closed they were accrued for that year. They were made for the part of the year and included in our audit. It would be accurate to say that the bonuses were accrued the year in which they were earned."

5. At issue in the court below, but not before us, was the evaluation of the $100 par preferred stock making up part of the bonuses. The Tax Court found that the fair market value of the stock when issued was $70 per share, and this determination is not contested by taxpayer. In re-computing taxpayer's tax liabilities,

therefore, *after* other computations have been made, any amount of the bonuses paid in preferred stock should be reduced, for deduction purposes, to seventy percent of face value.

6. In fact, a Revenue Ruling is directly in point:
"Bonuses, under a plan whereby the employer, using the accrual method of accounting, is obligated to pay to its employees at least two percent but not more than three percent of the company's profits for a taxable year; but under which the exact percentage cannot be determined until after the close of such year, are accruable and allowable as a deduction only to the extent of two percent of the company's profit for such year, subject to the test of 'reasonableness.' The portion of the bonuses paid in the following taxable year in excess of the minimum two percent are deductible in that year to the extent that

The judgment of the Tax Court is vacated, the petition for review is granted and this case is remanded to that Court for a re-computation of tax liability consonant with this opinion.

Vacated and remanded.

such bonuses constitute reasonable compensation for services rendered." Rev. Rul. 61–127.

The Commissioner attempts to distinguish that situation because he claims that, here, the amounts of the bonuses were not ascertained or ascertainable at the end of the years and that the "all events" test was not met. But, as we have said, the amount of bonuses due was ascertainable in the amount of at least twenty-five percent of profits.