AVON PRODUCTS, INC. and U.S.
Subsidiaries, Plaintiff–
Appellant,

v.

The UNITED STATES, Defendant–
Appellee.

No. 96–5003.

United States Court of Appeals,
Federal Circuit.

Oct. 8, 1996.

---

Robert Feldgarden, McDermott, Will & Emery, Washington, DC, argued, for plaintiff-appellant. With him on the brief was Christopher Kliefoth.

Kenneth L. Greene, Tax Division, Department of Justice, Washington, DC, argued, for defendant-appellee. With him on the brief were Loretta C. Argrett, Assistant Attorney General, Gary R. Allen, Chief, Appellate Section, and John A. Dudeck, Jr.

Before RICH, NEWMAN, and BRYSON, Circuit Judges.

BRYSON, Circuit Judge..

This appeal stems from a dispute over the appropriate tax treatment of employee profit-sharing payments made by the Mexican subsidiary of a United States taxpayer, Avon Products, Inc. The Court of Federal Claims granted summary judgment for the government on the ground that the subsidiary had improperly deducted certain payments in the year in which the payments were made rather than in the year in which the employees' services were rendered. *Avon Prods., Inc. v. United States*, No. 94–485 T, 1995 WL 579706. We conclude that the government is not entitled to summary judgment on that issue, and we therefore vacate the judgment in favor of the government and remand for further proceedings.

I

Avon is an accrual-basis corporate taxpayer whose taxable year follows the calendar year. Avon's Mexican subsidiary, Avon Cosmetics, S.A. de C.V. Mexico (Avon Mexico), is required by Mexican law to pay its employees a percentage of its profits each year within five months of the close of its taxable year. Those employee profit participation payments (or EPP payments) are central to this dispute because of their impact on the foreign tax credit made available to Avon by section 902 of the Internal Revenue Code, 26 U.S.C. § 902.

Under section 902, a U.S. taxpayer is entitled to a credit for foreign taxes paid by a foreign subsidiary. The portion of the foreign tax that can be taken as a credit by the U.S. taxpayer is a function of the dividends paid by the foreign subsidiary to the parent divided by the subsidiary's after-tax accumulated profits. If the subsidiary pays dividends to its parent equal in amount to its after-tax accumulated profits, the parent is entitled to a 100 percent tax credit for the foreign taxes paid by the subsidiary. If the subsidiary pays no dividends to its parent, the parent is entitled to no foreign tax credit.

Between 1967 and 1981, Avon Mexico made its EPP payments for each year within the first five months of the following year, either in early March or in May. For the years in which the EPP payments were made in early March, the Internal Revenue Service allowed the payments to be deducted from Avon Mexico's profits for the prior year. For the years in which the EPP payments were made in May, the IRS did not allow the deduction to be taken from Avon Mexico's profits in the prior year, but required the deduction to be taken in the year in which the payments were made.

In 1980, Avon Mexico did not pay a dividend to Avon, and thus Avon was unable to claim a foreign tax credit for that year. Avon determined, however, that it could increase its total foreign tax credits if it could deduct the EPP payments for both 1980 and 1981 from Avon Mexico's profits for 1981. In an effort to achieve that end, Avon Mexico waited until March 26, 1981, to make the EPP payments for 1980. Avon claimed that because the EPP payments for 1980 were made after March 15 in the year after they were earned, those payments constituted deferred compensation, not current compensation, and they were therefore deductible in 1981, the year of payment, under section 404(a)(5) of the Internal Revenue Code, 26 U.S.C. § 404(a)(5). Avon Mexico then made the EPP payments for 1981 before March 15, 1982, so that the EPP payments for 1981 would also be deductible in 1981. Avon claimed that because those payments were made before March 15 in the year following the year in which they were earned, they constituted current compensation, not deferred compensation, and they were therefore deductible in 1981, the year of accrual, under section 162 of the Internal Revenue Code, 26 U.S.C. § 162.

The IRS did not challenge the deduction in 1981 of the payments made before March 15, 1982, but it disallowed the deduction in 1981 of the payments made on March 26, 1981. The IRS contended that because Avon was an accrual-basis taxpayer, the deduction of the EPP payments for each year had to be taken in the year in which the obligation accrued. According to the IRS, the Mexican statute established Avon Mexico's liability at the moment the 1980 taxable year closed,

and the deduction of the 1980 EPP payments therefore had to be taken in 1980, not 1981. After the agency reassessed Avon's 1981 tax liability and Avon paid the deficiency, Avon filed an action for a refund in the Court of Federal Claims. Following cross-motions for summary judgment, the court upheld the agency's decision and denied the refund.

## II

■ Several sections of the Internal Revenue Code provide the statutory background against which the issue in this case arises. Section 162(a) permits taxpayers to deduct "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business." 26 U.S.C. § 162(a). Section 446(a) requires that taxable income "shall be computed under the method of accounting on the basis of which the taxpayer regularly computes his income in keeping his books." 26 U.S.C. § 446(a). Section 446(c)(2) permits a taxpayer, such as Avon, to use accrual-method accounting. 26 U.S.C. § 446(c)(2). Under that accounting scheme, the taxpayer is normally entitled (and required) to take a deduction in the year in which the expense accrues, not in the year in which the expense is actually paid. Thus, an accrual-basis taxpayer is usually required to take a deduction for an ordinary business expense in the year in which the obligation to pay and the amount of the payment have become final and definite. *Security Flour Mills Co. v. Commissioner*, 321 U.S. 281, 286, 64 S.Ct. 596, 598, 88 L.Ed. 725 (1944).

In accordance with those principles, current compensation paid to employees by an accrual-basis taxpayer is deductible in the year of accrual. Deferred compensation, however, is treated differently. Section 404 of the Internal Revenue Code creates a special set of tax rules to govern deferred compensation. Certain deferred compensation arrangements, referred to as "qualified plans," enjoy favorable tax treatment under section 404. *See* 26 U.S.C. § 404(a)(1)-(4). All other forms of deferred compensation do not.

Section 404 has a broad reach. It applies to "stock bonus, pension, profit-sharing, or annuity plan[s]," 26 U.S.C. § 404(a); it applies to "compensation ... paid or accrued on account of any employee under a plan deferring the receipt of such compensation," *id.*; and, even where there is no such "plan," it applies to any "method or arrangement of employer contributions or compensation which has the effect of a stock bonus, pension, profit-sharing, or annuity plan, or other plan deferring the receipt of compensation," 26 U.S.C. § 404(b).

■ For types of deferred compensation other than qualified plans, section 404 provides that a payment by the employer is not deductible in the year in which the obligation to make the payment accrues, but in the year in which the payment is includible in the employee's gross income. 26 U.S.C. § 404(a)(5). The general rules governing deductions taken by accrual-basis taxpayers therefore do not apply to deferred compensation under section 404.

## III

Avon argues that because it postponed including its EPP payments until March 26, 1981, those payments constituted "deferred compensation" within the meaning of section 404 and therefore were properly deducted in 1981, the year in which they were made. In response, the government contends that nothing Avon did in this case took it outside the normal rules applicable to an accrual-basis taxpayer—that an expense is deductible only in the year of accrual, regardless of when the accrued expense is actually paid.

The government makes three arguments in support of that thesis. First, it contends that Avon Mexico's EPP payments were not made pursuant to a "plan" and therefore do not fall within section 404. Second, it maintains that even if the EPP payments qualified as a form of compensation within the meaning of section 404, the payments were not "deferred" within the meaning of that statute, because they were made within a reasonable period of time after the close of Avon Mexico's 1980 taxable year. Finally, it argues that Avon's treatment of the EPP payments for 1980 constituted an impermissible change in the company's method of ac-

counting and must be disapproved for that reason as well.

## A

■ We first address the government's argument that section 404 does not apply to the EPP payments at issue in this case because the payments were not made pursuant to a "plan deferring the receipt of . . . compensation," as required by section 404(a). If accepted, that argument would have the perverse consequence that a payment of accrued compensation made more than a short time after the close of a taxable year pursuant to a plan of deferring compensation would not be deductible in the prior taxable year, but a payment of accrued compensation made on a date arbitrarily chosen by the employer (*i.e.*, not pursuant to a "plan" of deferral) could be deducted in the prior taxable year, even if the payment were made long after the close of that taxable year.

■ Both the language and the legislative history of section 404 persuade us that the statute does not compel this odd result. Rather, both indicate that the principles of section 404 governing the deductibility of deferred compensation payments apply to any arrangement in which the right to compensation was fixed by the end of the employer's taxable year but payment was deferred, regardless of whether the deferral was effected pursuant to a formal "plan."

Although section 404(a) is limited to compensation paid "under a plan deferring the receipt of such compensation," section 404 can be triggered even in the absence of such a "plan." Section 404(b) makes the deduction-timing rules of section 404(a) broadly applicable to cases in which "there is no plan," as long as "there is a method or arrangement of employer . . . compensation, which has the effect of a stock bonus, pension, profit-sharing, or annuity plan, or other plan deferring the receipt of compensation." 26 U.S.C. § 404(b).

When section 404(b) was enacted as part of the Internal Revenue Code of 1954, the statute differed from the present version in only two pertinent respects. It referred to a "method" of employer contributions or compensation, rather than a "method or arrangement" of employer contributions or compensation, and it referred in the catch-all clause to any "similar plan" deferring the receipt of income, rather than any "other plan" deferring the receipt of income. Even though the language of the statute was somewhat narrower than it is now, the legislative history indicates that the statute was meant to be given a broad construction. According to the House committee report, section 404(b) was intended to "make[ ] it clear that if there is any arrangement deferring payment of compensation for services rendered by one or more employees," section 404 would govern the deductibility of the employer's payments. H.R.Rep. No. 83–1337, at A152 (1954), *reprinted in* 1954 U.S.C.C.A.N. 4017, 4290.

The following year, the IRS issued a revenue ruling that was consistent with the broad interpretation of the "deferred compensation" statute expressed in the House report. The revenue ruling, Rev.Rul. 55–446, 1955–2 C.B. 531, dealt with bonus payments made by an accrual-basis taxpayer and calculated on the basis of the company's profits for the year of accrual. The question presented was whether the bonus payments, which were not paid until early in the year following the year of accrual, were deductible in the year of accrual as ordinary business expenses, or could be deducted only in the year in which the payments were made.

The IRS treated the payments as current compensation and thus allowed the employer a deduction in the year of accrual, but only if the company satisfied two conditions. The first condition was that the obligation to make the payment and the amount of the payment had to be fixed in the year of accrual—a standard prerequisite for the deduction of any accrued expense. The second condition, however, was that the payments be made "as soon after the close of the taxable year as is administratively feasible." *Id.*, 1955–2 C.B. at 532. The clear import of that condition was that a significant delay in making the payment, whether the delay was pursuant to a "plan of deferral" or otherwise, would render the payment "deferred compensation," which would be deductible only in the year in which it was made.

In 1978 and 1984, Congress made two changes in section 404(b), both of which were designed to ensure that section 404 would be applied broadly. The 1978 amendment substituted the words "other plan" for the words "similar plan," so that the statute would be understood to make the deduction-timing rules of section 404(a) applicable to situations in which an employer did not have a "plan" deferring the receipt of compensation, but used any other "method of employer contributions or compensation" having the effect of a plan deferring the receipt of compensation. In similarly worded reports, the House and Senate committees explained that they wanted to make it clear that any arrangement "which results in a deferral of the receipt of compensation is subject to the deferred compensation deduction timing rules" of section 404. Thus, the committees explained, "compensation deferred under an employment contract or year-end bonuses declared by a corporate board of directors, but not paid within a reasonable period of time after the close of the taxable year, would be subject to the deduction-timing rules of section 404." H.R.Rep. No. 95–1445, at 61–62 (1978), *reprinted in* 1978 U.S.C.C.A.N. 7046, 7098–99; S.Rep. No. 95–1263, at 73–74 (1978), *reprinted in* 1978 U.S.C.C.A.N. 6761, 6836–37. That statement of legislative purpose confirms the breadth of the statute and supports Avon's argument that a one-time decision by a corporation such as Avon Mexico to make an accrued payment on a deferred basis brings the payment within the reach of section 404.

Further confirmation of the intended breadth of section 404 can be found in an amendment to section 404(b) made in 1984. Again seeking to ensure that section 404 would be read broadly, Congress added the term "arrangement" to section 404(b) so that the statute would explicitly apply to any "method or arrangement" of employer compensation having the effect of a plan deferring the receipt of compensation. The House committee explained that the language change "clarifies current law" to ensure that "all compensation arrangements which defer receipt of compensation by the employee or independent contractor will be subject to these special deduction-timing rules [of section 404]." The committee added that the rule "is consistent with current law, under which amounts of compensation deferred under an employment contract or year-end bonuses declared by a corporate board of directors, but not paid within a brief period after the close of the taxable year, are subject to the deduction-timing rules of section 404." H.R.Rep. No. 98–432, Part II, at 1283 (1984), *reprinted in* 1984 U.S.C.C.A.N. 697, 944.

The conference committee reiterated the view that section 404 should apply broadly to deferred compensation payments, stating that the reference to deferred compensation arrangements under section 404(b) "includes all compensation, fee, and similar payments, however denominated, except those which are specifically exempted." H.R.Conf.Rep. No. 98–861, at 1160 (1984), *reprinted in* 1984 U.S.C.C.A.N. 1445, 1848. The committee added that it intended that a bonus or other form of compensation would be considered current compensation, and not deferred compensation subject to section 404, as long as the payment was made within two and one-half months of the close of the taxable year in which the payment obligation accrued. *Id.*

In 1986, the Treasury Department issued temporary regulations incorporating the 1978 and 1984 statutory changes and reflecting the views expressed in the contemporaneous congressional reports. Those temporary regulations, which are still in effect, address the question of when an employer can deduct in the year of accrual an employee compensation payment, such as a year-end bonus payment, in cases in which the amount of the bonus was fixed before the end of the employer's taxable year but the payment was not made until the following year. The regulations characterize the compensation as "deferred" if it is paid "more than a brief period of time after the end of the employer's taxable year in which the services creating the right to such compensation or benefits are performed." Temp.Treas.Reg. § 1.404(b)–1T, A–2(a). The regulations then establish what amounts to a grace period of two and one-half months after the close of the employer's taxable year within which the employer can make the payment and still deduct

it in the prior year. Thus, "salary under an employment contract or a bonus under a year-end bonus declaration is not considered paid under a plan, or method or arrangement, deferring the receipt of compensation to the extent that such salary or bonus is received by the employee on or before the end of the applicable 2–1/2 month period." *Id.* A–2(c). If the payment is made more than two and one-half months after the end of taxable year in which the services were rendered, the payment "is presumed to be paid under a plan, or method or arrangement, deferring the receipt of compensation." *Id.* A–2(b)(1). The taxpayer can rebut that presumption, but only by showing "that it was impracticable, either administratively or economically, to avoid the deferral of the receipt by the employee of the amount of compensation" beyond the two and one-half month period, and that, "as of the end of the employer's taxable year, such impracticability was unforeseeable." *Id.* A–2(b)(2).

The temporary regulations were not in effect during the years at issue in this case and thus are not directly applicable to the dispute before us. Nonetheless, the regulations, read together with the 1955 revenue ruling, demonstrate that the government has long regarded a bonus or salary payment that is not made shortly after the end of the year in which it was earned to be a form of deferred compensation that is subject to the deduction-timing rules of section 404, *i.e.*, a form of compensation that is deductible in the year of payment and not in the year of accrual.

Indeed, the government's present litigating position on this issue appears to be inconsistent with its prior treatment of identical payments by this very taxpayer. As we have noted, Avon Mexico had made EPP payments since 1967. When Avon Mexico made the EPP payments before March 15 of the year following the taxable year, the IRS permitted the company to deduct the EPP payments from its profits for the taxable year. When Avon Mexico made the EPP payments in May of the year following the taxable year, however, the IRS refused to permit the company to deduct the EPP payments from its profits for the taxable year

and required it to take the deduction in the year of payment. The IRS was therefore apparently treating payments made more than a short time after the close of the taxable year (*i.e.,* the payments made in May) as deferred compensation that was required by section 404 to be deducted in the year of payment, not in the year of accrual. The government's prior treatment of this taxpayer's EPP payments thus appears to have turned on the timing of the payments, not on whether the payments were made pursuant to a plan of deferral.

In making the contrary argument here, the government relies on several cases holding that employers could deduct in the year of accrual forms of employee compensation that were not paid until late in the following year. Those cases, however, either pre-date section 404 and its predecessor, *e.g., Willoughby Camera Stores, Inc. v. Commissioner,* 125 F.2d 607 (2d Cir.1942), or apply to forms of compensation that were not covered by section 404 at the time, *e.g., Washington Post Co. v. United States,* 186 Ct.Cl. 528, 405 F.2d 1279 (1969); *Timken Co. v. United States,* 218 Ct.Cl. 633, 590 F.2d 342 (1978), or were cases in which the question of the timing of the payments does not appear to have been raised as an issue, *e.g., Kershaw Mfg. Co. v. Commissioner,* 313 F.2d 942 (5th Cir.1963); *Produce Reporter Co. v. Commissioner,* 18 T.C. 69, 1952 WL 286 (1952), *aff'd,* 207 F.2d 586 (7th Cir.1953). The Tax Court's more recent decision in *Truck & Equip. Corp. v. Commissioner,* 98 T.C. 141, 1992 WL 18381 (1992), which contains an exhaustive analysis of section 404 and its legislative history, makes clear that in its current form (and in its form at the time of the transaction at issue in this case) section 404 applies to any payment of employee compensation that is postponed for more than a short period of time after the end of the year in which it accrues. In that case, the Tax Court held that accrued year-end bonuses that were not paid until at least five months into the following year had to be deducted in the year of payment, not the year of accrual. The Tax Court's analysis turned on the timing of the payments, not whether they were made pursuant to a "plan." We therefore reject the government's argument that Avon Mexico's

EPP payments, made on March 26, 1981, cannot be regarded as deferred compensation within the meaning of section 404 because they were not made pursuant to a plan of deferral.

### B

■ The government's second argument is narrower. The argument is that even if the EPP payments fall within the general scope of section 404, the payments that Avon Mexico made on March 26, 1981, were not deductible in the year in which they were made because they were made soon after the close of the 1980 taxable year. The thrust of this argument is that Avon might have been able to prevail if it had waited longer to make the EPP payments, but a delay of three months is not long enough to constitute the "deferral" that triggers the deduction-timing rules of section 404.

Before the temporary regulations were issued in 1986, the IRS drew the line between current and deferred compensation through a series of revenue rulings, including revenue ruling 55–446, discussed above. In that revenue ruling, the IRS required that, in order for a bonus or other form of employee compensation to be deductible in the year of accrual, it had to be paid "as soon after the close of the taxable year as is administratively feasible." Rev.Rul. 55–446, 1955–2 C.B. at 532. The payments in the case before it were deductible as current compensation, the IRS explained, because the bonuses were paid "early in the following year" after the company's auditors had determined that the company's earnings were sufficient to pay the proposed bonuses, "but in any event prior to the due date of the company's Federal income tax return for the year in which the bonuses were earned," *id.*, that is, within two and one-half months of the close of the company's taxable year.

In a second revenue ruling issued two years later, the IRS explained that the amounts allocated "and promptly paid" to the company's employees constituted current rather than deferred compensation, and thus section 404 did not apply. The Service was careful, however, to emphasize that its characterization of the payments as current compensation, deductible under section 162, was contingent on there being no plan to defer the payment of compensation "beyond the time when it first becomes administratively feasible to make such payment." Rev.Rul. 57–88, 1957–1 C.B. 88, 89. Thus, in order for the payment to be deductible in the year of accrual, rather than in the year of payment (as would be dictated by section 404), the "amounts paid under the plan [must be] paid by an accrual method taxpayer soon after the close of the taxable year." *Id.*

In a third in that series of revenue rulings, the IRS again held that a taxpayer could deduct as current compensation in the year of accrual a bonus payment that was fixed in one taxable year and paid in the next. Although that revenue ruling did not focus on the issue of how quickly the payment had to be made in order to qualify as current compensation, it did note that under the taxpayer's bonus program, the bonus payments had to be made within two and one-half months of the close of the taxable year. *See* Rev. Rul. 61–127, 1961–1 C.B. 36.

The government argues that the revenue rulings establish that compensation payments are "current," and not "deferred," if they are made within a reasonable time after the close of the taxable year in which the right to compensation accrued, and that Avon Mexico's EPP payments for 1980, which were made within three months of the close of Avon Mexico's 1980 taxable year, were "clearly" made within a reasonable time. In response, Avon argues that the EPP payments constituted deferred compensation because they were made more than two and one-half months after the close of the pertinent taxable year. In Avon's view, the law in 1981 made clear that the payment of a sum earned by an employee during the employer's taxable year had to be treated as deferred compensation if the payment was made more than two and one-half months after the close of the employer's taxable year.

■ Avon's argument would be valid under the currently applicable regulations. At the time of the transactions at issue in this case, however, the only law on the issue was

in the form of the revenue rulings in which the IRS addressed the distinction between deferred and current compensation. We interpret those revenue rulings to establish the principle that compensation such as an employee bonus payment made in the year following the year of accrual was deductible in the year of accrual if it was paid "promptly" after the close of the taxable year and "as soon as it was administratively feasible" to do so. Otherwise, the payment would be deemed deferred compensation. The dispositive question in this case is therefore whether the payment on March 26, 1981, was made as soon as it was administratively feasible to do so, or whether the payment was deferred for some period of time after that date.

Avon introduced evidence that it was administratively feasible for it to make the payments earlier than March 26, 1981. The government's response was to object to the consideration of that evidence on the ground that it was inconsistent with an earlier admission by Avon that it "had no plan to defer the payment of Avon Mexico's 1980 employee profit participation payments beyond the time when it first became administratively feasible to make such payment." In view of this state of the record, we cannot resolve this issue without further proceedings in the trial court. We therefore vacate the grant of summary judgment in favor of the government and remand the case to the trial court for further proceedings necessary to determine whether Avon Mexico's EPP payments in 1981 should be considered "deferred compensation" within the contemplation of section 404, *i.e.*, whether those payments were made "promptly" in the year after the 1980 taxable year, or were delayed for a period of time after it was administratively feasible for Avon Mexico to make them.

### C

The government's final argument is that Avon impermissibly changed its method of accounting without IRS permission when it reported the EPP payments for 1980 on its 1981 return. *See* 26 U.S.C. § 446(e). We conclude that Avon made no change in its method of accounting, but merely decided to make a particular payment at a time that would affect its tax consequences. Taxpayers make such choices all the time without those choices being subject to nullification on the theory that they reflect a change in accounting method. For example, a cash-basis taxpayer may postpone a payment normally made on December 31 until January 1 of the next year in order to shift the deduction for that payment into the next taxable year. That decision would not be subject to challenge as a change in taxpayer's method of accounting. The same principle applies to Avon Mexico's decision to postpone its 1980 EPP payments until a time that it believed would result in shifting the deduction for those payments into the 1981 taxable year. If Avon is correct that the year in which its EPP payments are deductible depends on the date the payments are made, the decision to make the payments on a particular date will have tax consequences, but those consequences are not the product of a change in accounting method. *See Hallmark Cards, Inc. v. Commissioner*, 90 T.C. 26, 35, 1988 WL 64 (1988); *Schniers v. Commissioner*, 69 T.C. 511, 519–20, 1977 WL 3725 (1977); *Decision, Inc. v. Commissioner*, 47 T.C. 58, 64, 1966 WL 1101 (1966). The fact that the transaction may have been structured for tax purposes does not, of course, render it impermissible. *See A.P. Green Export Co. v. United States*, 151 Ct.Cl. 628, 284 F.2d 383, 389–90 (1960); *Helvering v. Gregory*, 69 F.2d 809, 810 (2d Cir.1934) (L.Hand, J.) ("a transaction, otherwise within an exception of the tax law, does not lose its immunity, because it is actuated by a desire to avoid, or, if one choose, to evade, taxation"), *aff'd*, 293 U.S. 465, 55 S.Ct. 266, 79 L.Ed. 596 (1935).

The government's argument on this point is also inconsistent with the IRS's prior treatment of this taxpayer. In each of the pre–1981 years in which Avon Mexico made its EPP payments after March 15, the IRS required it to deduct the payments for the prior taxable year from its earnings for the subsequent year. In one instance, the IRS's required system of deductions resulted in the deduction of two years' EPP payments in the same taxable year. While the payments that the IRS insisted be deducted during the year of payment were made in May rather than in

late March, the company's decision to claim its deduction of the 1980 EPP payments in 1981 was at least consistent with the IRS's prior treatment of those payments, even if not compelled by it. Avon Mexico's decision to make the 1980 EPP payments after March 15, 1981, therefore did not constitute an unauthorized change in the company's method of accounting.

Each party shall bear its own costs for this appeal.

*VACATED AND REMANDED.*