107 T.C. No. 16


UNITED STATES TAX COURT


SCHMIDT BAKING COMPANY, INC., Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 10458-95.                    Filed November 14, 1996.


        P funded its vacation and severance pay
obligations to its employees for 1991 by purchasing an
irrevocable letter of credit on March 13, 1992.  The
letter of credit constituted a transfer of an interest
in substantially vested property, includable in income
of the employees as of that date under sec. 83, I.R.C.
P, an accrual basis taxpayer, deducted the amount of
the letter of credit on its 1991 return on the basis
that it paid the vacation pay within 2-1/2 months of
the close of its 1991 taxable year and was therefore
entitled to the claimed deduction under sec. 83(h),
I.R.C., and sec. 1.83-6(a)(3), Income Tax Regs.  R
disallowed the deduction on the ground that the letter
of credit did not constitute payment to the employees
within the 2-1/2 month period with the result that sec.
404(a)(5), I.R.C., and sec. 1.404(b)-1T, Temp. Income
Tax Regs., 51 Fed. Reg. 4321 (Feb. 4, 1986), applied
and the deduction was not allowable to P for its 1991
taxable year.  Held, the letter of credit constituted
payment on March 13, 1992, so that sec. 404(a)(5),

I.R.C., does not apply, and the deduction for vacation and severance pay is an allowable deduction for P's 1991 taxable year under sec. 83(h), I.R.C., and sec. 1.83-6(a)(3), Income Tax Regs.

Theodore W. Hirsh, Andrea R. Macintosh, and Frances M. Angelos, for petitioners.

Clare J. Brooks, for respondent.


OPINION

TANNENWALD, Judge:  Respondent determined the following deficiencies in petitioner's Federal income taxes:

| Taxable Year Ended | Deficiency |
|---|---|
| Dec. 26, 1987 | $  6,982.00 |
| Dec. 31, 1988 | 193,182.00 |
| Dec. 28, 1991 | 2,873.00 |

After concessions, the sole issue for decision is whether petitioner may deduct for its 1991 tax year amounts for vacation and severance pay which accrued in that year, were funded within 2-1/2 months of the end of that year, i.e., March 13, 1992, by means of an irrevocable letter of credit, and were includable in the income of the employees as of that date.

Background

This case was submitted fully stipulated under Rule 122.[1] The stipulation of facts and supplemental stipulation of facts are incorporated herein by this reference and found accordingly.

Petitioner, an accrual basis taxpayer, is a corporation with over 1,300 employees that, at the time of the filing of the petition, had its principal place of business in Baltimore, Maryland. It filed timely Federal income tax returns for the years at issue with the Internal Revenue Service Center, Philadelphia, Pennsylvania.

Petitioner had in place a vacation plan, whereby vacation earned in the first year could only be taken between January 1st and December 31st of the following year. Terminated employees could get cash for their unused vacation pay with proper notice to petitioner. Petitioner also had a plan of severance pay in the event employees were laid off.

On March 13, 1992, petitioner purchased an irrevocable standby letter of credit in the amount of $2,092,421 representing accrued 1991 liabilities of $1,773,183 for vacation pay and $319,238 for severance pay. Petitioner's employees were designated as the beneficiaries with each employee and the amount of the accrued benefit to which he or she was entitled separately

---

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the taxable years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

listed.

The letter of credit was secured by petitioner's general assets, and its employees were named as sole beneficiaries thereunder. Under this arrangement, if petitioner failed to pay secured vacation benefits, they would be paid by the issuer of the letter of credit upon the request of the employees' agent, petitioner's chief financial officer.

Under applicable bankruptcy law, petitioner's general creditors had no right with respect to payments under the letter of credit.

The parties have stipulated that the letter of credit represented a transfer of substantially vested interests in property to the employees for purposes of section 83, and that the fair market value of the interests was includable in the employees' gross incomes for 1992 as of the date the interests were transferred.[2]

On its return, timely filed, for the taxable year ending December 28, 1991, petitioner deducted all liabilities for vacation and severance pay accrued during that year that were listed in the letter of credit, in the amount of $2,092,421. By way of a net operating loss carryback, petitioner also claimed a

---

[2] Although we recognize that this stipulation represents a conclusion of law that may not be binding upon us, we have found no reason not to utilize it as an element of decision. See Godlewski v. Commissioner, 90 T.C. 200, 203 n.5 (1988); Barnette v. Commissioner, T.C. Memo. 1992-595, affd. without published opinion 41 F.3d 667 (11th Cir. 1994).

deduction arising from this payment in the taxable year 1988. Respondent determined that the 1991 deduction, and hence the carryback to 1988, was not allowable.

Discussion

Resolution of the question before us involves an analysis of several interrelated statutory and regulatory provisions which can only be described as a semantical exercise worthy of Judge Learned Hand's famous commentary on the complexity of the Internal Revenue Code, a commentary which has acquired added significance in the years since it was first articulated.[3] As a consequence, we set forth that analysis in order to bring into focus the precise question that we must decide, namely, whether the amounts of the accrued vacation and severance pay were "paid" when the letter of credit was purchased on March 13, 1992.

Statutory Framework

The parties have stipulated that the purchase of the irrevocable letter of credit was a transfer under section 83, resulting in includability of the value of the interest transferred in the income of the employees as of the date of

---

[3]  [T]he words of such an act as the Income Tax * * * merely dance before my eyes in a meaningless procession: cross-reference to cross-reference, exception upon exception * * *.  * * * at times I cannot help recalling a saying of William James about certain passages of Hegel:  that they were no doubt written with a passion of rationality; but that one cannot help wondering whether to the reader they have any significance save that the words are strung together with syntactical correctness.  * * * [Hand, "Thomas Walter Swan," 57 Yale L.J. 167, 169 (1947).]

transfer, i.e., March 13, 1992. Petitioner claims the deduction at issue based on section 83(h)[4] and section 1.83-6(a)(3), Income Tax Regs.[5] Section 83(h) allows a deduction in the year the amount of a transfer is included in the employees' income. Section 1.83-6(a)(3)(first sentence), Income Tax Regs., allows an accrual basis employer an earlier deduction, "in accordance with his method of accounting", where there has been a transfer of "substantially vested" assets to the employee.

---

[4]  Sec. 83(h) provides:

> (h)  Deduction by Employer.--In the case of a transfer of property to which this section applies or a cancellation of a restriction described in subsection (d), there shall be allowed as a deduction under section 162, to the person for whom were performed the services in connection with which such property was transferred, an amount equal to the amount included under subsection (a), (b), or (d)(2) in the gross income of the person who performed such services.  Such deduction shall be allowed for the taxable year of such person in which or with which ends the taxable year in which such amount is included in the gross income of the person who performed such services.

[5]  Sec. 1.83-6(a), Income Tax Regs. provides in pertinent part:

> (3) <u>Exceptions</u>.  Where property is substantially vested upon transfer, the deduction shall be allowed to such person in accordance with his method of accounting (in conformity with sections 446 and 461).  In the case of a transfer to an employee benefit plan described in § 1.162-10(a) or * * * [other transfers not applicable in this case], section 83(h) and this section do not apply.

However, should another section require that petitioner not use its usual method of accounting, sec. 1.461-1(a)(2)(iii)(A), Income Tax Regs., provides that the sec. 461 rules will defer to that other provision.

Section 1.83-6(a)(3)(second sentence), Income Tax Regs., provides that section 83(h) and the regulations thereunder do not apply to "a transfer to an employee benefit plan described in § 1.162-10(a)". Section 1.162-10(a), Income Tax Regs.,[6] provides that, as a general rule, a taxpayer may deduct vacation pay and severance pay under that section. However, deductions for amounts used to provide benefits under a "deferred compensation plan of the type referred to in section 404(a) * * * shall be governed by the provisions of section 404 and the regulations issued thereunder." Sec. 1.162-10(a)(third and fourth sentences), Income Tax Regs.

---

[6] Sec. 1.162-10(a), Income Tax Regs., provides:

Certain employee benefits.
    (a) In General. Amounts paid or accrued by a taxpayer on account of injuries received by employees and lump-sum amounts paid or accrued as compensation for injuries are proper deductions as ordinary and necessary expenses. Such deductions are limited to the amount not compensated for by insurance or otherwise. Amounts paid or accrued within the taxable year for dismissal wages, unemployment benefits, guaranteed annual wages, vacations, or a sickness, accident, hospitalization, medical expense, recreational, welfare, or similar benefit plan, are deductible under section 162(a) if they are ordinary and necessary expenses of the trade or business. However, except as provided in paragraph (b) of this section [not applicable herein], such amounts shall not be deductible under section 162(a) if, under any circumstances, they may be used to provide benefits under a stock bonus, pension, annuity, profit-sharing, or other deferred compensation plan of the type referred to in section 404(a). In such an event, the extent to which these amounts are deductible from gross income shall be governed by the provisions of section 404 and the regulations issued thereunder. [Emphasis added.]

Section 404(a) covers deductions in respect of contributions to pension trusts, employees' annuities, stock bonus and profit-sharing trusts, foreign trusts, and other plans "deferring the receipt of * * * compensation."  Section 404(a)(5) deals with deductions in respect of "other plans" specifically including deductions for "vacation pay which is treated as deferred compensation".[7]  Section 404(b) provides that any method or arrangement that has the effect of a plan deferring the receipt of compensation or other benefits for employees will be treated as a deferred compensation plan.  Section 1.404(b)-1T A-2, Temporary[8] Income Tax Regs., 51 Fed. Reg. 4312, 4321-4322 (Feb. 4, 1986), provides:

> (a)  For purposes of section 404(a), (b), and (d), a plan, or method or arrangement, defers the receipt of compensation or benefits to the extent it is one under which an employee receives compensation or benefits more than a brief period of time after the end of the employer's taxable year in which the services creating

---

[7]  Sec. 404(a)(5) provides:

> (5) Other plans.--If the plan is not one included in paragraph (1), (2), or (3), in the taxable year in which an amount attributable to the contribution is includible in the gross income of employees participating in the plan, but, in the case of a plan in which more than one employee participates only if separate accounts are maintained for each employee. For purposes of this section, any vacation pay which is treated as deferred compensation shall be deductible for the taxable year of the employer in which paid to the employee.

[8]  Temporary regulations are accorded the same weight as final regulations.  Truck & Equipment Corp. v. Commissioner, 98 T.C. 141, 149 (1992); Zinniel v. Commissioner, 89 T.C. 357 (1987), affd. 883 F.2d 1350 (7th Cir. 1989).

the right to such compensation or benefits are performed. The determination of whether a plan, or method or arrangement, defers the receipts of compensation or benefits is made separately with respect to each employee and each amount of compensation or benefit. * * *

(b)(1) A plan, or method or arrangement, shall be presumed to be one deferring the receipt of compensation for more than a brief period of time after the end of an employer's taxable year to the extent that compensation is received after the 15th day of the 3rd calendar month after the end of the employer's taxable year in which the related services are rendered ("the 2 1/2 month period"). * * *

* * * * * * *

(c) A plan, or method or arrangement, shall not be considered as deferring the receipt of compensation or benefits for more than a brief period of time after the end of the employer's taxable year to the extent that compensation or benefits are received by the employee on or before the end of the applicable 2 1/2 month period. * * * [Emphasis added.]

To summarize our complicated march through the Code and regulations, section 1.83-6(a)(3), Income Tax Regs., implementing section 83(h), refers us to section 1.162-10(a), Income Tax Regs., which refers us to section 404(a)(5), which refers us to section 404(b)(1) and (2), as implemented by section 1.404(b)-1T, Temporary Income Tax Regs., 51 Fed. Reg. 4321 (Feb. 4, 1986), which contains the test that we must apply.

Section 1.404(b)-1T, Temporary Income Tax Regs., provides that if the benefits were "received" within the 2-1/2 month period,[9] the amounts would not be deferred compensation, they

---

[9] Two and 1/2 months is often used interchangeably with 75 days.
(continued...)

would <u>not</u> be paid pursuant to "plans" under section 404(b), they would <u>not</u> be described in section 404(a)(5), and thus section 1.162-10(a), Income Tax Regs., would <u>not</u> apply, and petitioner <u>would</u> be entitled to its deduction under section 83(h) and section 1.83-6(a)(3), Income Tax Regs.

According to the regulations, if the benefits in question were <u>not</u> "received" within the 2-1/2 month period, it is presumed that the amounts <u>would</u> be deferred compensation, they <u>would</u> be paid pursuant to "plans" under section 404(b), they <u>would</u> be described in section 404(a)(5), and then section 1.162-10(a), Income Tax Regs., <u>would</u> apply, sending us back to section 404(a)(5) for the deductibility of the amounts.

The parties have stipulated that the amounts specified in the letter of credit were includable in the employees' gross income under section 83 as of the date of transfer.  Petitioner maintains that since the amounts were vested, funded, and includable within the 2-1/2 month period, they must have been "received" within that period for purposes of section 1.404(b)-1T, Temporary Income Tax Regs.  Respondent contends that mere includability in income is not enough, that "received" requires that the employee must have been able to put the amount included "in his pocket" for the 2-1/2 month "window" under the

---

[9](...continued)
For an illuminating discussion of the correlation between 2-1/2 months and 75 days see <u>Mansuss Realty Co. v. Commissioner</u>, 143 F.2d 286 (2d Cir. 1944), affg. 1 T.C. 932 (1943).

regulations to apply. Thus, we must decide whether includability of income is sufficiently equivalent to the receipt of income to satisfy the 2-1/2 month rule. An inextricable element in arriving at this decision is whether petitioner "paid" the benefits within the 2-1/2 month period since the statutory provision, i.e., section 404(a)(5), speaks in terms of payment in respect of vacation pay and, as will subsequently appear, see infra pp. 15-17, the legislative history reveals that Congress considered that payment provided the foundation for the application of the 2-1/2 month rule. Indeed, this emphasis on payment, i.e., "paid", may account for respondent's "in the pocket" interpretation of the word "received" in the temporary regulations, for it is clear that, if the employees could put the vacation pay in their pockets, it must have been paid to them.

Section 404(a)(5) (first sentence) allows a deduction in respect of deferred compensation plans generally when an item is "includible in the gross income of employees" (emphasis added), as does section 1.404(a)-12(b), Income Tax Regs. Similarly, section 83(h) allows a deduction when an item is included in the employee's income. Furthermore, section 1.461(h)-4T, Temporary Income Tax Regs., 51 Fed. Reg. 4329 (Feb. 4, 1986), indicates that includability is the test of receipt for section 404.[10] In

---

[10] Sec. 1.461(h)-4T, Q&A-1, Temporary Income Tax Regs., 51 Fed. Reg. 4312, 4329, provides:

Q-1: What is the relationship between the economic
(continued...)

this frame of reference, it is at least arguable that includability in income and receipt are matching elements with the result that since the amounts represented by the letter of credit were includable in the income of the employees as of March 13, 1992, they were "received" by the employees on that date and the "window" provided by the 2-1/2 month rule of section 1.404(b)-1T(c) has been satisfied. Such a conclusion would be based upon the proposition that the word "received" in the regulations, standing as it does without any qualifying adjective such as "actually", means nothing more than received for income tax purposes.

However, we find it necessary to go beyond this simple analysis because the governing statutory provision, section 404(a)(5), speaks in terms of payment as well as includability in income. Before proceeding to discuss the implications of this statutory thrust, there are several tangential elements which should be noted. First, the 2-1/2 month rule is not specifically

---

[10](...continued)
performance requirements of section 461(h) and sections 404 and 419?
A-1: * * * In the case of a contribution or compensation subject to section 404 or 419, pursuant to the authority under section 461(h)(2), economic performance occurs (i) in the case of a plan subject to section 404, either as the contribution is made under the plan or, if section 404(a)(5) is applicable, as an amount attributable to such contribution is _includible_ in the gross income of an employee. * * * [Emphasis added.]

See discussion of sec. 1.461(h)-4T, which mirrors this explanation, in Rev. Rul. 88-68, 1988-2 C.B. 117.

set forth in a statutory provision dealing with deferred compensation arrangements but is a creature of regulations and recognition in legislative history.  See Avon Products, Inc. v. United States, 97 F.3d 1435 (Fed. Cir. 1996); Truck & Equipment Corp. v. Commissioner, 98 T.C. 141, 145-154 (1992).  Second, we recognize that it does not necessarily follow that funds have been paid because they have been constructively received for income tax purposes.  See Gillis v. Commissioner, 63 T.C. 11, 17 (1974).  Third, the decided cases are less than models of clarity in delineating distinctions in meaning among "included", "received", and "paid", a view reflected in the opinion of the Court of Appeals for the Ninth Circuit in Albertson's Inc. v. Commissioner, 42 F.3d 537, 543 (9th Cir. 1994), affg. 95 T.C. 415 (1990).  The Ninth Circuit noted that, for nonqualified plans, "the employer is ordinarily allowed no deduction for contribution, payments or benefits until they are taxed to the employee", which it equated with a denial of the "employer's deduction until the deferred amount is included in the employee's income", meaning in its view that "current law * * * defers the * * * deduction "until the year of payment.  The court concluded that "an employer cannot take tax deductions for payments to its employees until the DCA participants include those payments in their taxable income--that is, until the employees actually receive the compensation promised to them."  Albertson's Inc. v. Commissioner, 42 F.3d at 543 (citations omitted and emphasis

added).

Against the foregoing background, we turn to an analysis of whether there was not only includability in income but also payment as of March 13, 1992.  If these two elements are found to be present, we think there need be no further consideration of the word "received" in the regulations because the combination of includability and payment must necessarily be equated with "received".  To better understand our analysis, we repeat the text of section 404(a)(5):

> (5) Other plans.--If the plan is not one included in paragraph (1), (2), or (3), in the taxable year in which an amount attributable to the contribution is includible in the gross income of employees participating in the plan, but, in the case of a plan in which more than one employee participates only if separate accounts are maintained for each employee. For purposes of this section, any vacation pay which is treated as deferred compensation shall be deductible for the taxable year of the employer in which paid to the employee.

Clearly, section 404(a)(5) on its face provides no clear guidance to the question before us, since it speaks (first sentence) in terms of "includable in income" in respect of deferred compensation other than vacation pay and in terms of "paid" in respect of vacation pay (second sentence).  Under these circumstances, we find it appropriate, indeed mandated, that we look to the legislative history, particularly since that history articulates the 2-1/2 month rule, which is our main concern.  See Hospital Corp. of America v. Commissioner, 107 T.C. 116 (1996), particularly at 129.  Furthermore, the use of legislative history

in this case is particularly appropriate where neither party questions the validity of the 2-1/2 month rule, but merely its application.

Prior to 1987, section 404(a)(5) contained only the first sentence; the rules governing vacation pay were contained in section 463, which provided for a deduction based on the establishment of a reserve.  In 1987, when the Omnibus Budget Reconciliation Act of 1987, Pub. L. 100-203, 101 Stat. 1330, was being considered, both the House and Senate proposed to repeal section 463 and make no change in section 404(a)(5) as it then stood.  In so doing, the House Ways and Means Committee and the Senate Finance Committee discussed the proposed action in the following identical language:

> 7.  Reserve for accrued vacation pay (sec. 10121 of the
>     bill and sec. 463 of the Code)

> ### Present Law

> Under present law, an accrual-method taxpayer generally is permitted a deduction in the taxable year in which all the events have occurred that determine the fact of a liability and the amount thereof can be determined with reasonable accuracy (the "all-events" test).  In determining whether an amount has been incurred with respect to any item during the taxable year, all events that establish liability for such amount are not treated as having occurred any earlier than the time economic performance occurs (sec. 461(h)).  With respect to a liability that arises as a result of another person's providing services to the taxpayer (such as the liability to provide vacation pay in exchange for service by an employee), economic performance generally occurs when such other person provides the services.

> In order to ensure the proper matching of income and deductions in the case of deferred benefits (such

<u>as vacation pay earned in the current taxable year, but paid in a subsequent year</u>) for employees, an employer generally is entitled to claim a deduction in the taxable year of the employer in which ends the taxable year of the employee in which the benefit is includible in gross income (sec. 404(b)).  This rule applies to deferred benefits without regard to the economic performance rules.  Consequently, an employer is entitled to a deduction for vacation pay in the taxable year of the employer in which ends the earlier of the taxable year of the employee for which the vacation pay <u>(1) vests (if the vacation pay plan is funded by the employer), or (2) is paid</u>.

An exception to this rule applies to amounts that are paid within 2-1/2 months after the close of the taxable year of the employer in which the vacation pay is earned.  Such amounts are not subject to the deduction timing rules applicable to deferred benefits, but are subject to the general rules under which an employer is entitled to a deduction when performance occurs (i.e., when the services of the employee for which vacation pay is earned are performed).  Because amounts paid within 2-1/2 months after the close of the employer's taxable year generally will qualify for the exception to the economic performance requirements, such amounts generally will be deductible for the preceding taxable year (the year in which the vacation pay is earned) even though the employee does not include the benefit in income in the preceding taxable year.

\*    \*    \*    \*    \*    \*    \*

### Reasons for Change

The special rules under present law relating to the reserve for accrued vacation pay create a disparity in tax treatment between accrued vacation pay and other deferred benefits.  The committee believes that the timing of deductions for vacation pay should not be more favorable than the timing of deductions for other deferred benefits.

### Explanation of Provision

The special rule that permits taxpayers a deduction for additions to a reserve for vacation pay would be repealed.  Accordingly, under the bill, deductions for vacation pay would be allowed in any taxable year <u>for amounts paid, or funded amounts that</u>

vest, during the year or within 2-1/2 months after the end of the year. [H. Rept. 100-391 at 1061-1062 (1987); S. Print 100-63 at 143-144 (1987); emphasis added.[11]]

Respondent argues that a proper reading of the foregoing language indicates that the committees intended to draw a distinction between situations where the vacation pay was vested and funded and where it is paid. We disagree. Given a reading of the entire expression of the committees' viewpoint, we think they intended to equate, rather than separate, funding and vesting and payment. In this connection, we also are of the view that the broad language of the reports, particularly the reference to "deferred benefits" with vacation pay, is simply an example which indicates that the committees intended the 2-1/2 month rule to apply to deferred benefits such as severance pay, which is involved herein along with vacation pay.

Respondent further seeks to buttress her position by pointing to the second sentence of section 404(a)(5) (see supra note 7) which was added by the conference committee with the following explanation:

> The conference agreement follows the Senate amendment with modifications. The conference agreement provides that vacation pay earned during any taxable year, but not paid to employees on or before the date that is 2-1/2 months after the end of the taxable year, is deductible for the taxable year of the employer in which it is paid to employees. This provision is an

---

[11] Almost identical language was contained in the committee reports when changes in the then existing reserve provision were made in 1986. H. Rept. 99-426 (1985), 1986-3 C.B. (Vol. 2) 641; S. Rept. 99-313 (1985), 1986-3 C.B. (Vol. 3) 674.

> exception to the general rule for deferred compensation and deferred benefits pursuant to which an employer is allowed a deduction for the taxable year of the employer in which ends the taxable year of the employee in which the compensation or benefit is includible in gross income. [H. Conf. Rept. 100-495, 920 (1987), 1987-3 C.B. 193, 201; emphasis added.]

Respondent argues that this change, coupled with the absence of any reference to funded and vested amounts, shows that the conference committee (and hence the Congress which enacted the added sentence) intended to exclude such amounts from payment and permit only actual "cash in pocket" to be considered as having been paid. Again, we disagree. A careful reading of the conference committee report shows that the committee was making a change only in the timing of the deduction in respect of vacation pay in contrast to the timing of other deferred compensation payments, and then only in the context of clear recognition that its change applied only to payments after the 2-1/2 month period.

Having found our way through the statutory briarpatch of sections 83, 162, and 404 and the regulations thereunder, it is obvious that the disposition of this case turns on a single, straightforward question, namely whether petitioner paid the vacation and severance pay within the 2-1/2 month period. Viewing the totality of the statutory and regulatory provisions and the pertinent legislative history in their entirety, we think that petitioner did so by means of an irrevocable parting of funds, through the creation of the letter of credit, with the separately designated employee-beneficiaries, which was not

subject to the claims of petitioner's creditors and which constituted amounts includable in the income of such employee-beneficiaries as of March 13, 1992.

As a consequence and in accordance with section 1.404(b)-1T, Temporary Income Tax Regs., neither the vacation nor the severance pay constituted a deferred compensation plan to which section 404(a)(5) applies. This being the case, section 83(h) and section 1.83-6(a)(3), Income Tax Regs., apply, and petitioner is entitled to deduct the amounts in question in accordance with its normal accrual method of accounting, i.e., for its fiscal year ending December 28, 1991.

In order to take into account concessions by petitioner on other issues,

<u>Decision will be entered</u>

<u>under Rule 155</u>.