110 T.C. No. 19


UNITED STATES TAX COURT


VENTURE FUNDING, LTD., Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 4174-95.            Filed March 26, 1998.


        P transferred stock to its employees as
compensation for services, and it claimed a deduction
in the year of transfer for the value of the stock.
None of P's employees included the value of the
transferred stock in his or her gross income for the
year of transfer.
        <u>Held</u>:  Sec. 83(h), I.R.C., does not allow P to
deduct the reported amount in the year of transfer.


<u>Joseph Falcone</u>, <u>Brian H. Rolfe</u>, and <u>Robert J. Zinkel, Jr.</u>,
for petitioner.

    <u>Mark I. Siegel</u>, for respondent.

OPINION

LARO, Judge:  This case was submitted to the Court fully stipulated.  See Rule 122.  Petitioner petitioned the Court to redetermine respondent's determination of deficiencies of $347,583 and $27,578 in its 1988 and 1989 Federal income taxes. We must decide whether section 83(h) prevents petitioner from currently deducting the value of stock that it transferred to its employees in 1988 as compensation for services.  We hold it does.[1]  Unless otherwise indicated, section references are to the Internal Revenue Code in effect for the subject years.  Rule references are to the Tax Court Rules of Practice and Procedure.

## Background

All facts have been stipulated.  The stipulations of fact and the exhibits submitted therewith are incorporated herein by this reference.  Petitioner is an accrual method corporation whose principal place of business was in Detroit, Michigan, when it petitioned the Court.  It was owned as follows during the subject years:

---

[1] The deficiency for 1989 results entirely from respondent's determination that a research and development credit that petitioner claimed for 1989, as a carryover from 1988, was usable in full in 1988.  We sustain respondent's determination for 1989 as a result of our holding on the deduction issue.

| Shareholder | Ownership Percentage |
|---|---|
| Eugene Schuster | 49.45 |
| Monis Schuster | 9.99 |
| Adam Schuster | 9.99 |
| Joseph Schuster | 9.99 |
| Sarah Schuster | 9.99 |
| Jayson Pankin | 9.99 |
| Ann Schuster | .50 |
| London Arts | .10 |
| Total | 100.00 |

All the Schusters are related, and London Arts is a corporation whose stock is owned by Eugene Schuster.

On March 27, 1987, Endotronics, Inc. (Endotronics), filed a petition for reorganization in the U.S. Bankruptcy Court for the District of Minnesota. On April 4, 1988, the court confirmed an amended plan of reorganization under which petitioner gained a controlling interest in Endotronics. Later that day, petitioner transferred Endotronics stock to 12 of its employees as compensation for services. The following chart lists the employees who received Endotronics stock and the fair market value of the stock that they each received:

| Employee | Fair Market Value |
|---|---|
| Eugene Schuster | $390,625.00 |
| Monis Schuster | 156,250.00 |
| Mary Parkhill | 58,593.75 |
| Bert Williams | 78,125.00 |
| David Dawson | 78,125.00 |
| Ira Snider | 66,953.13 |
| Christopher Dean | 11,718.75 |
| Jayson Pankin | 156,250.00 |
| Werner Wahl | 7,812.50 |
| W. Kent Clarke | 7,812.50 |
| Carolyn Mazurkiewicz | 7,812.50 |
| Mary Lore | 58,593.75 |
| Total | 1,078,671.88 |

Petitioner did not issue to any of these employees, or to respondent, a Form W-2, Wage and Tax Statement, or a Form 1099-MISC, Miscellaneous Income, and none of these employees included any of this compensation in his or her 1988 gross income. Petitioner claimed a $1,078,672 deduction for the transfer on its 1988 Federal income tax return. Petitioner filed its 1988 return based on the calendar year.

## Discussion

Respondent determined that petitioner could not deduct the claimed amount because it failed to meet the requirements of section 83.[2] Petitioner must prove this determination wrong. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Petitioner also must prove its entitlement to the deduction. Deductions are a matter of legislative grace. New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934).

Petitioner argues that section 83(h) and the underlying regulations let it deduct the claimed amount in 1988 because petitioner's employees were required to recognize the corresponding income in that year. The fact that the employees failed to recognize this income in 1988, petitioner argues, has no bearing on its right to this deduction. Petitioner argues that respondent's regulations are invalid to the extent that they

---

[2] Respondent determined alternatively that petitioner realized a $1,078,672 capital gain on its distribution of the stock. Because we agree with respondent's primary position, we do not address the alternative determination.

require an employer to issue an employee a Form W-2 or Form 1099 as a prerequisite to a deduction under section 83(h). Petitioner alleges that the income from the transfer of the Endotronics stock was includable in petitioner's employees' incomes for the year of transfer, which is the statutory requirement for a deduction under section 83(h), and respondent's regulatory requirement that petitioner also issue Forms W-2 to its employees to deduct the compensation under section 83(h) impermissibly adds restrictions to a statute which are not there. Petitioner, relying mainly on section 1.83-6(a)(3), Income Tax Regs., argues that it may deduct the claimed amount in 1988 because that amount is deductible in 1988 under petitioner's accrual method.

We disagree with petitioner that it may deduct the claimed amount in 1988. We start our analysis with the statutory text, construing the language as written by the legislators with reference to the legislative history primarily to learn the purpose of the statute and to resolve any ambiguity in the words used in the text. Trans City Life Ins. Co. v. Commissioner, 106 T.C. 274, 299 (1996). Section 83, which was added to the Code as section 321(a) of the Tax Reform Act of 1969, Pub. L. 91-172, 83 Stat. 588, reads in relevant part:

> SEC. 83.  PROPERTY TRANSFERRED IN CONNECTION
>          WITH  PERFORMANCE OF SERVICES.
>
>     (a) General Rule.--If, in connection with the
> performance of services, property is transferred to any
> person other than the person for whom such services are
> performed, the excess of--

(1) the fair market value of such property (determined without regard to any restriction other than a restriction which by its terms will never lapse) at the first time the rights of the person having the beneficial interest in such property are transferable or are not subject to a substantial risk of forfeiture, whichever occurs earlier, over

(2) the amount (if any) paid for such property,

shall be included in the gross income of the person who performed such services in the first taxable year in which the rights of the person having the beneficial interest in such property are transferable or are not subject to a substantial risk of forfeiture, whichever is applicable. * * *

*       *       *       *       *       *       *

(h) Deduction by Employer.--In the case of a transfer of property to which this section applies * * *, there shall be allowed as a deduction under section 162, to the person for whom were performed the services in connection with which such property was transferred, an amount equal to the amount included under subsection (a) * * * in the gross income of the person who performed such services.  Such deduction shall be allowed for the taxable year of such person in which or with which ends the taxable year in which such amount is included in the gross income of the person who performed such services.

The legislative history to section 83 reveals that it was enacted primarily to set forth rules on the tax treatment of deferred compensation arrangements known as restricted stock plans; i.e., arrangements under which employers transfer stock to their employees as compensation for services, where the stock is subject to restrictions which affect its value.  S. Rept. 91-552, at 253, 256-263 (1969), 1969-3 C.B. 423, 500-503.  Section 83 was not meant, however, to reach only restricted stock.  The

legislators drafted section 83 broadly to reach any transaction in which "a person * * * receives a beneficial interest in property, such as stock, by reason of his [or her] performance of services", id. at 256, 1969-3 C.B. at 501, and, as this Court has observed previously, "Absent specific provision that a particular transfer [of property to a person in connection with the performance of services] is excepted from section 83, this section is applicable", Alves v. Commissioner, 79 T.C. 864, 876 (1982), affd. 734 F.2d 478 (9th Cir. 1984). Once applicable, section 83 rests an employer's deduction on its employee's inclusion in income of a corresponding amount. As stated by the Senate Finance Committee in its report: "The allowable deduction is the amount which the employee is required to recognize as income. The deduction is to be allowed in the employer's accounting period which includes the close of the taxable year in which the employee recognizes the income". S. Rept. 91-552, supra at 262, 1969-3 C.B. at 502.

From the text of section 83, we understand that it applies to the case at hand because "in connection with the performance of services, property [was] transferred to [a] person other than the person for whom such services [were] performed". See also sec. 1.83-1(a)(1), Income Tax Regs. ("Section 83 provides rules for the taxation of property transferred to an employee * * * in connection with the performance of services by such employee"). See generally sec. 1.61-2(d)(6), Income Tax Regs. (rules of

section 1.61-2(d), Income Tax Regs., relating to compensation paid other than in cash, apply to transfers of property "to the extent such rules are not inconsistent with section 83"). We also understand that petitioner may deduct the value of the transferred property when the corresponding value is "included in the gross income of the [persons] who performed such services." Because none of petitioner's employees included the corresponding amount in his or her 1988 income, it follows that petitioner may not deduct any of the claimed amount in that year. Whereas petitioner would have us read section 83(h) to allow it a deduction in 1988 for the amount of income that was includable in its employees' income for 1988, we decline to do so. An amount is deductible under section 83(h) in the year that the corresponding income is "included" in the recipient employee's income, which means to us that the amount is taken into account in determining the tax liability of the employee for that year. See S. Rept. 91-552, supra at 262, 1969-3 C.B. at 502 ("The deduction [under section 83(h)] is to be allowed in the employer's accounting period which includes the close of the taxable year in which the employee recognizes the income"); see also Lenz v. Commissioner, 101 T.C. 260, 265 (1993) ("'Allowable deduction' generally refers to a deduction which qualifies under a specific Code provision whereas 'allowed deduction', on the other hand, refers to a deduction granted by the Internal Revenue Service which is actually taken on a return and will result in a

reduction of the taxpayer's income tax").  See generally Bittker & McMahon, Federal Income Taxation of Individuals, par. 28.2, at 28-2 (2d ed. 1995) (the word "recognized" means "taken into account in computing taxable income").[3]

Neither party references the legislative history of section 83(h), and we do not resort to it to alter the plain meaning of the words used in the statute.  A statute speaks for itself, and its legislative history is sought to clarify the text only when the meaning of the words therein is "inescapably ambiguous".  Garcia v. United States, 469 U.S. 70, 76 n.3 (1984); see also Ex parte Collett, 337 U.S. 55 (1949).  When read in view of the

---

[3] We also note that the drafters of section 83 knew the difference between the suffixes "-able" and "-ible", on the one hand, and "-ed" on the other.  Section 83 includes both "transferable" and "transferred" in many places, and it is clear that those words are not interchangeable.  Moreover, sec. 83 was added to the Code by sec. 321(a) of the Tax Reform Act of 1969 (the Act), Pub. L. 91-172, 83 Stat. 588, and sec. 321(b)(3) of the Act, 83 Stat. 591, which provides similar but not identical rules for nonexempt trusts and nonqualified annuities, amended sec. 404(a)(5) to provide for deductibility "in the taxable year in which an amount attributable to the contribution is includible in the gross income".  (Emphasis added.)  When we find, as we do here, that different words are used in the same section of the same act, we do not impute to Congress the intent to express the same meaning through the different words.  See United States v. Olympic Radio & Television, 349 U.S. 232 (1955); Estate of Cuddihy v. Commissioner, 32 T.C. 1171, 1176 (1959); Root Glass Co. v. Commissioner, 1 T.C. 475, 477 (1943).  "[L]egal documents are for the most part nonemotive, [and] it is presumed that the author's language has been used, not for its artistic or emotional effect, but for its ability to convey ideas.  Accordingly, it is presumed that the author has not varied his terminology unless he has changed his meaning, and has not changed his meaning unless he has varied his terminology".  Zuanich v. Commissioner, 77 T.C. 428, 443 n.26 (1981) (quoting R. Dickerson, The Interpretation and Application of Statutes 224 (1975)).

legislative intent for section 83, the text of section 83(h) is unambiguous.  As stated in section 83(h), an employer who transfers property to an employee as compensation for services rendered to it may generally deduct "an amount equal to the amount included * * * in the gross income of the person who performed such services * * * [and the] deduction shall be allowed for the taxable year of * * * [the employer] in which or with which ends the taxable year in which such amount is included in the * * * [employee's] gross income".  Given the clarity of this text, our inquiry starts and ends with the statutory text, and we apply the plain and common meaning of that text.  TVA v. Hill, 437 U.S. 153 (1978); United States v. American Trucking Associations, Inc., 310 U.S. 534, 543-544 (1940); see also Connecticut Natl. Bank v. Germain, 503 U.S. 249, 253-254 (1992). The statutory prerequisite to petitioner's deduction under section 83(h) is that the corresponding amount must be "included" in its employees' income, and, given the fact that petitioner's employees did not include any of the subject income in their 1988 incomes, we conclude that petitioner is not entitled to a corresponding deduction for that year.

We recognize that Congress' insistence that an amount be included in an employee's income as a precursor to an employer's deduction under section 83(h) may present difficulties to some employers attempting to ascertain whether their employees included an amount in income.  We decline to second-guess the

wisdom of the Congress in promulgating such a requirement, or to rewrite section 83(h) in a way that is more employer friendly by substituting the word "includable" for the word "included".  As the Court has noted many times before in similar settings, we apply section 83 according to its terms, although such an application could result in an inequity in a particular case.  See Alves v. Commissioner, 79 T.C. at 878, and the cases cited therein, for prior cases in which the Court has applied section 83 literally, notwithstanding the inequities that could occur from such an application.  Although the Congress has given the Commissioner broad authority under section 7805(a) to prescribe rules and regulations to implement provisions, including provisions such as the one at hand which could otherwise be difficult to meet in practice, the duty and province of this and other courts are to interpret the statute as written.  As the Supreme Court has repeatedly instructed the lower courts for almost 200 years, "where * * * the statute's language is plain, 'the sole function of the courts is to enforce it according to its terms.'"  United States v. Ron Pair Enters., Inc., 489 U.S. 235, 241 (1989) (quoting Caminetti v. United States, 242 U.S. 470, 485 (1917)); see also United States v. Goldenberg, 168 U.S. 95, 102-103 (1897); Oneale v. Thornton, 10 U.S. (6 Cranch) 53, 68 (1810).  "[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there." Connecticut Natl. Bank v. Germain, supra at 253-254.

In the case at hand, the Commissioner has prescribed an employer-friendly regulatory rule with respect to section 83(h). The Commissioner's regulations, however, do not help petitioner under the facts herein. The applicable regulations are found in section 1.83-6, Income Tax Regs. These regulations, which are generally effective for transfers of property after June 30, 1969, T.D. 7554, 1978-2 C.B. 71, 82, read:

§1.83-6. Deduction by employer.

(a) Allowance of deduction--(1) General rule. In the case of a transfer of property in connection with the performance of services * * *, a deduction is allowable under section 162 or 212, to the person for whom such services were performed. The amount of the deduction is equal to the amount includible as compensation in the gross income of the service provider, under section 83(a) * * *, but only to the extent such amount meets the requirements of section 162 or 212 and the regulations thereunder. Such deduction shall be allowed only for the taxable year of such person in which or with which ends the taxable year of the service provider in which such amount is includible as compensation. * * *

(2) Special Rule.--If the service provider is an employee of the person for whom services were performed, such deduction is allowed for the taxable year of the employer in which or with which ends the taxable year of the employee in which such amount is includible as compensation, but only if the employer deducts and withholds upon such amount in accordance with section 3402. A deduction will not be disallowed under the preceding sentence if the employer does not withhold and deduct upon amounts excluded from gross income, such as amounts excluded under section 79, section 101(b), or subchapter N. * * *

(3) Exceptions.--Where property is substantially vested upon transfer, the deduction shall be allowed to such person in accordance with his method of accounting (in conformity with section 446 and 461). * * *

Under these interpretative regulations, the Commissioner has allowed an employer such as petitioner to deduct compensation paid to an employee through a transfer of property in the year that the corresponding income is includable in the employee's income if the employer deducts and withholds income tax on the payment under section 3402.  See sec. 1.83-6(a)(2), Income Tax Regs.; see also sec. 7805(a) (the Commissioner authorized to "prescribe all needful rules and regulations for the enforcement of this title").  Petitioner does not benefit from these regulations because it did not withhold income tax on any of the payments underlying the claimed deduction.  Although petitioner attempts to avoid this result by arguing that these regulations are invalid, we do not agree.  The statutory text allows a deduction when the corresponding amount is included in income, and the Commissioner's regulations merely establish a "safe harbor" for concluding that the corresponding amount was included in income.  The Commissioner's regulatory implementation of the congressional mandate set forth in section 83(h) is reasonable, which, in turn, means that the regulations are valid.  United States v. Vogel Fertilizer Co., 455 U.S. 16, 24 (1982); United States v. Correll, 389 U.S. 299, 307 (1967).  The special rule as to the deduction and withholding of payroll taxes was meant to alleviate the "difficult[ies] that a service recipient may have in demonstrating that an amount has actually been included in the service provider's gross income", see T.D. 8599, 1995-2 C.B. 12,

12, and its effect that an employer's deduction is in fact offset by a corresponding inclusion in income comports with the statute's purpose of matching an employer's deduction with income inclusion by the employee.

The history of these regulations is noteworthy. When the Commissioner originally proposed these regulations in 1971, they did not contain a safe harbor provision under which an employer could deduct the value of property transferred to an employee as compensation for services, absent the employee's including the corresponding amount in income. Section 1.83-6, Income Tax Regs., was originally proposed as follows:

> §1.83-6. Deduction by employer.--(a) In general. In the case of a transfer of property in connection with the performance of services * * *, there is allowed as a deduction under section 162 or 212, to the person for whom such services were performed, an amount equal to the amount included, under subsection (a) * * * of section 83 as compensation, in the gross income of the person who performed such services, but only to the extent such amount meets the requirements of section 162 or 212 and the regulations thereunder. Such deduction shall be allowed only for the taxable year of such person in which or with which ends the taxable year for which such amount is included as compensation in the gross income of the person who performed such services. * * * [Sec. 1.83-6, Proposed Income Tax Regs., 36 Fed. Reg. 10793 (June 3, 1971).]

After these proposed regulations were published, the Commissioner received numerous comments expressing concern as to the difficulty that an employer may have in demonstrating that an amount has actually been included in an employee's gross income. Accordingly, the Commissioner, in finalizing the proposed

regulations, opted to allow a deduction at the time that the corresponding amount was includable in an employee's gross income, even if the employee did not properly include the includable amount in his or her income. As a quid pro quo to receiving the deduction at that time, however, the Commissioner required that the employer deduct and withhold payroll taxes from the underlying payment.

Most recently, the Commissioner has amended the regulations under section 83(h) to "more closely [follow] the statutory language of [that] section". T.D. 8599, supra, 1995-2 C.B. at 13. The current regulations, which are effective for deductions in taxable years beginning on or after January 1, 1995, but which may be used by employers claiming deductions for any taxable year not closed by the period of limitations under section 6501, read:

> §1.83-6. Deduction by employer. (a) Allowance of deduction--(1) General rule. In the case of a transfer of property in connection with the performance of services * * *, a deduction is allowable under section 162 or 212 to the person for whom the services were performed. The amount of the deduction is equal to the amount included as compensation in the gross income of the service provider under section 83(a) * * *, but only to the extent the amount meets the requirements of section 162 or 212 and the regulations thereunder. The deduction is allowed only for the taxable year of that person in which or with which ends the taxable year of the service provider in which the amount is included as compensation. * * *

> (2) Special Rule. For purposes of paragraph (a)(1) of this section, the service provider is deemed to have included the amount as compensation in gross income if the person for whom the services were performed satisfies in a timely manner all requirements of section 6041 or section 6041A, and the regulations

thereunder, with respect to that amount of compensation.   * * *

(3) Exceptions.   Where property is substantially vested upon transfer, the deduction shall be allowed to such person in accordance with his method of accounting (in conformity with sections 446 and 461). * * *

As stated by the Commissioner in the preamble to these regulations:

Under section 83(h) of the Code, in the case of a transfer of property to which section 83(a) applies, the person for whom services were provided may deduct an amount equal to the amount included in the service provider's gross income.   In light of the difficulty that a service recipient may have in demonstrating that an amount has actually been included in the service provider's gross income, the general rule in former §1.83-6(a)(1) permitted the deduction for the amount "includible" in the service provider's gross income.   Thus, the deduction was allowed to the service recipient even if the service provider did not properly report the includible amount.   Where the service provider was an employee of the service recipient, however, the special rule in §1.83-6(a)(2) provided that a deduction could be claimed only if the service recipient (employer) deducted and withheld income tax in accordance with section 3402.   The special rule was designed to ensure that the service recipient's deduction was in fact offset by a corresponding inclusion in the service provider's gross income. The special rule was limited to employer-employee situations because in other situations there was no underlying withholding requirement upon which the deduction could be conditioned.

Taxpayers expressed concern that it was often difficult to satisfy the prerequisite that employers must deduct and withhold income tax from payments in kind as a condition for claiming a deduction.   These regulations address this concern by eliminating this prerequisite, while still ensuring consistent treatment between service recipients and service providers as required by the statute.   In addition, because the deduction no longer is conditioned on withholding, there no longer is a need to have different rules for those who receive services from employees and those who receive services from others.

Under these regulations, the former general rule and special rule are replaced by a revised general rule that more closely follows the statutory language of section 83(h). The service recipient is allowed a deduction for the amount "included" in the service provider's gross income. For this purpose, the amount included means the amount reported on an original or amended return or included in gross income as a result of an IRS audit of the service provider.

Because of the potential difficulty of demonstrating actual inclusion by the service provider, a special rule provides that, if the service recipient timely complies with applicable Form W-2 or 1099 reporting requirements under section 6041 (or 6041A), as appropriate, with respect to the amount includible in income by the service provider, the service provider is deemed to have included the amount in gross income for this purpose. Thus, the regulations allow the deduction without requiring the service recipient to demonstrate actual inclusion by the service provider. * * *

*       *       *       *       *       *       *

The deemed inclusion rule may be used only by a service recipient whose compliance with applicable Form W-2 or 1099 reporting requirements is timely. Thus, for example, under the current reporting requirements, if amounts attributable to one or more section 83 transfers of property are includible in an employee's income in year 1 (and are not eligible for any reporting exemption), the employer generally is required to furnish the employee a Form W-2 reflecting that amount by January 31 of year 2 and generally is required to file a copy of the Form W-2 with the federal government by the last day of February of year 2. If the employer reports to the employee and the government in a timely manner, the employer can rely on the deemed inclusion rule to claim a deduction for the amount in year 1. If the employee's Form W-2 is not furnished until after January 31 of year 2 or the government's copy of Form W-2 is not filed until after the last day of February of year 2, the employer generally is required to demonstrate that the employee actually included the amount in income in order to support its deduction of the amount. * * *

*       *       *       *       *       *       *

T.D. 8599, <u>supra</u>, 1995-2 C.B. at 12-13.  Petitioner can find no refuge in current section 1.83-6, Income Tax Regs., because: (1) It has not issued a Form W-2 or Form 1099, and (2) none of its employees has included the value of the Endotronics stock in his or her gross income.

Nor can petitioner find refuge in section 1.83-6(a)(3), Income Tax Regs.  Section 1.83-6(a)(3), Income Tax Regs., provides an exception to the general timing rule of section 1.83-6(a)(1), Income Tax Regs., in that the deduction afforded by section 1.83-6(a)(1) and/or (2), Income Tax Regs., is allowed to the employer in accordance with its method of accounting where the underlying property is substantially vested upon transfer. Section 1.83-6(a)(3), Income Tax Regs., does not, as argued by petitioner, provide an independent basis for deducting an amount under section 83(h).  Section 1.83-6(a)(3), Income Tax Regs., merely sets forth the time that an amount is deductible, where the employer's right to the deduction has already been established by section 1.83-6(a)(1) and/or (2), Income Tax Regs. The fact that section 1.83-6(a)(3), Income Tax Regs., is only a timing provision is quickly seen by comparing the rules contained in that section with the rules contained in section 1.83-6(a)(1), Income Tax Regs.  Section 1.83-6(a)(1), Income Tax Regs., tracks the statutory text in that they both contain three separate rules, the first of which allows a deduction under section 162 or 212, the second of which sets forth the amount of the deduction,

and the third of which sets forth the timing of the deduction. Section 1.83-6(a)(3), Income Tax Regs., by contrast, contains only one rule, and that rule speaks only to the timing of the deduction.

The following example illustrates the applicability of section 1.83-6(a)(3), Income Tax Regs.  Assume that the respective taxable years of an employer and an employee end on July 31 and December 31.  Assume further that the employer transfers property to the employee on May 1, 1993, in connection with services rendered, that this property is substantially vested at the time of transfer, and that the employer deducts and withholds income tax on this transfer under section 3402.  In such a case, the employee must include the value of the property in income for his or her taxable year ended December 31, 1993. See sec. 83(a).  With respect to the employer, the general rule of section 1.83-6(a)(1) and (2), Income Tax Regs., forces it to deduct the value of the transfer in its taxable year ended July 31, 1994 (i.e., its taxable year in which ends the taxable year of the employee in which the amount is included in gross income), although the employer made the payment in its taxable year ended July 31, 1993.  By virtue of the safe harbor in section 1.83-6(a)(2), Income Tax Regs., and the exception in section 1.83-6(a)(3), Income Tax Regs., the employer can take the deduction in its taxable year ended July 31, 1993; i.e., the year in which the amount is deductible under the employer's method of

accounting.  See <u>Schmidt Baking Co. v. Commissioner</u>, 107 T.C. 271 (1996); see also <u>Chalmette Gen. Hosp., Inc. v. United States</u>, 71 AFTR 2d 93-3314, 90-2 USTC par. 50,578 (E.D. La. 1990). See generally Utz, 384-2nd T.M., Restricted Property--Section 83 A-15-16 (1996).

Petitioner argues that section 1.83-6(a)(3), Income Tax Regs., the two cases cited immediately above, and <u>Robinson v. Commissioner</u>, 82 T.C. 444 (1984), support its right to a deduction in 1988, the year in which the amount is deductible under its accrual method, notwithstanding the fact that its employees did not include any of the subject amount in income. We do not agree.  As discussed above, section 1.83-6(a)(3), Income Tax Regs., does not independently bestow a deduction on petitioner with respect to its transfer of the Endotronics stock. Moreover, petitioner's reliance on <u>Schmidt Baking Co.</u>, <u>Chalmette Gen. Hosp.</u>, and <u>Robinson</u> is misplaced.  None of the Courts in those cases addressed or decided the issue that is before us today.  Nor did the parties in those cases, unlike the parties here, dispute that the employers were entitled to a deduction, challenging only the timing of that deduction.

In summary, petitioner has not met the requirements for deductibility under section 83(h), and it has not met the requirements for deductibility under section 1.83-6, Income Tax Regs., either pre- or post-amendment.  Thus, section 83(h) prevents petitioner from deducting the value of the transferred

stock in 1988.  We have considered all arguments made by petitioner for a contrary holding and, to the extent not discussed above, find them to be irrelevant or without merit.

To reflect the foregoing,

<u>Decision will be entered for respondent</u>.

Reviewed by the Court.

CHABOT, SWIFT, JACOBS, GERBER, PARR, COLVIN, FOLEY, and VASQUEZ, <u>JJ</u>., agree with this majority opinion.

COLVIN, J., concurring:  I agree with the reasoning and conclusions stated by the majority.  The majority concludes that section 83(h) does not allow petitioner to deduct the value of stock that it transferred to 12 of its employees as compensation for services in the year of the transfer.  The majority denies the deduction because none of the 12 employees included the value of the stock in income, and because petitioner did not qualify for safe harbors provided in applicable regulations that allow the employer a deduction if it meets certain withholding or reporting requirements.  I concur to emphasize some points of agreement with the majority.

Judge Ruwe recognizes that his interpretation of section 83(h) raises questions about "the 'equity' of allowing a corporate deduction for compensation paid to its controlling shareholders and principal officers, who failed to report the same items as income."  Judge Ruwe's dissent p. 54.  I agree with the majority that Congress did not intend and the statute does not require the inequitable result that follows from the dissent's reasoning.

I.

"Included"

Section 83(a) requires that a service provider (e.g., an employee) include the fair market value of property received from the employer in his or her gross income in the first taxable year in which the rights of the person having the beneficial interest

in such property are transferable or are not subject to a substantial risk of forfeiture. Section 83(h) allows an employer to deduct an amount equal to the amount "included" under section 83(a).

Judge Ruwe's substitution of the word "includible", Judge Ruwe's dissent pp. 39-40, for the word "included" is at odds with our usual understanding of these and analogous terms. I agree with the majority that the "ed" ending and the "ible" (or "able") ending have different meanings. The "ed" ending refers to something done in fact, e.g., an expense "deducted", income "reported", or an item "recognized" in computing gross income. Majority op. pp. 8-9. The "ible" (or "able") ending refers to something legally required, such as "reportable" income, or permitted, such as a "deductible" expense. Id. Consistent with those usual meanings, the majority properly reads "included" to require that the amount has in fact been included in income. Majority op. p. 8.

Section 83(a) says that the fair market value of certain property "shall be included" in the gross income of a service provider in the first year the property is not subject to a substantial risk of forfeiture. The majority (majority op. p. 7) and Judge Ruwe's dissent p. 39 correctly point out that section 83(a) imposes a legal obligation on the recipient of property. Congress could also have imposed that obligation by saying that the fair market value of the property is "includible" in the

recipient's income.  See sec. 88 (nuclear decommissioning costs are "includible" in gross income).

Judge Ruwe's dissent uses the word "included" in section 83(a) to construe the word "included" in section 83(h).  Although the choice of "included" or "includible" in section 83(a) would not affect our reading of that subsection, Judge Ruwe's dissent's substitution of "includible" for "included" in section 83(h) would dramatically change the meaning of that subsection.

From the fact that Congress might have accomplished its purpose in section 83(a) equally well by saying "includible" instead of "included", Judge Ruwe reasons that Congress meant "includible" in section 83(h) where it used "included".  Judge Ruwe's dissent pp.39-40.  The dissent in essence relies on the maxim of statutory construction that if Congress uses the same term in two places in the statute, we should give it the same meaning.

Maxims of construction are useful interpretative tools but are not dispositive.  The dissent overlooks the different purpose and context of sections 83(a) and (h).  The same word or phrase appearing in different places in the internal revenue laws may have different meanings depending on the context and legislative purpose involved.  See Helvering v. Stockholms Enskilda Bank, 293 U.S. 84, 86-88 (1934); Helvering v. Morgan's Inc., 293 U.S. 121, 128 (1934).  The context of section 83(a), an income inclusion provision, is different than section 83(h), a deduction

provision. While the term "includible" is interchangeable with "included" in section 83(a) without affecting the result, it is definitely not interchangeable in section 83(h). The effect of applying the maxim regarding consistent use of terms here would be to override the plain meaning of the term "included" in section 83(h) and to significantly alter the meaning of section 83(h).

## II.

### The 1995 Regulations

Judge Ruwe's dissent does not take into account the 1995 amendments to the section 83(h) regulations or the accompanying preamble, both of which shed important light on the issue in dispute here.

The 1995 regulations under section 83(h) provide a safe harbor under which a service provider is deemed to have included an amount as compensation in gross income if the person for whom the services were performed timely meets Form W-2 or Form 1099 reporting requirements under sections 6041 or 6041A. Sec. 1.83-6(a)(2), Income Tax Regs. The preamble accompanying the 1995 amendments to those regulations states that, absent qualification under that special rule, the employer must show that the employee "actually included" the amount in income in order to support its deduction of the amount. T.D. 8599, 1995-2 C.B. 12, 12-13.

The 1995 amendments to the section 83(h) regulations and the preamble accompanying them show that the Commissioner's

interpretation of section 83(h) is the same as that of the majority. This is shown by the preamble to the 1995 regulations which states in part:

> Because of the potential difficulty of demonstrating actual inclusion by the service provider, a special rule provides that, if the service recipient timely complies with applicable Form W-2 or 1099 reporting requirements under section 6041 (or 6041A), as appropriate, with respect to the amount includible in income by the service provider, the service provider is deemed to have included the amount in gross income for this purpose. * * * [T.D. 8599, 1995-2 C.B. 13.]

A safe harbor is needed only if the interpretation of the majority is correct. This is so because the purpose of the safe harbor is to ease an employer's potential difficulty of proving that an employee actually included the fair market value of property in income.

If Judge Ruwe's reading of the regulations in effect from 1978 to 1995 (i.e., that an employer may deduct the fair market value of property given to an employee whether or not the employee includes that property in income) is correct, then the 1995 regulations are a total reversal in position by the IRS. The preamble to the 1995 regulations indicates that this interpretation is incorrect. The IRS did not reverse its position on this fundamental issue. T.D. 8599, 1995-2 C.B. at 12-13. In describing the regulations in effect from 1978 to 1995, the preamble states:

> In light of the difficulty that a service recipient may have in demonstrating that an amount has actually been included in the service provider's gross income, the

general rule in former section 1.83-6(a)(1) permitted the deduction for the amount "includible" in the service provider's gross income.  [T.D. 8599, 1995-2 C.B. at 12.]

After describing a special rule provided in the regulations in effect from 1978 to 1995 (reasonably characterized as a safe harbor by the majority, majority op. p. 14), the preamble continues as follows:

The special rule was designed to ensure that the service recipient's deduction was in fact offset by a corresponding inclusion in the service provider's gross income.  [T.D. 8599, 1995-2 C.B. at 12.]

The "difficulty" to which the first of these two quotes refers is the service recipient's task of proving that a service provider included the fair market value of property in income. The regulations in effect from 1978 to 1995 presented that "difficulty", prompting the IRS to provide a safe harbor.  Thus, the preamble accompanying issuance of the 1995 regulations shows that the meaning of "included" in section 83(h) was the same before and after 1995, and is as the majority holds.

III.

Judge Ruwe's Dissent's Concerns About Practicality

Judge Ruwe's dissent is concerned that the result reached by the majority leads to a rule compliance with which is "impractical, if not impossible" for employers and employees or

other service providers.  Judge Ruwe's dissent pp. 44, 47.  Maybe it is impractical to expect the employer to have this level of cooperation from its (typically, key) employees to which it has distributed property.  But if we are to consider those impracticalities, we should also compare the employer's difficulties to those faced by the IRS when, as here, employers and their key employees play "hide the ball" with the result that the employer can deduct the fair market value of property under section 83(h) which has not been included or reported in income by the recipient of the property.

IV.

Conclusion

For the foregoing reasons, I agree with the reasoning and conclusions of the majority that petitioner may not deduct the value of stock that it transferred to its employees in 1988 under section 83(h).


CHABOT, SWIFT, JACOBS, GERBER, PARR, FOLEY, and VASQUEZ, JJ., agree with this concurring opinion.

BEGHE, J., concurring in result and dissenting in part: Judge Ruwe's concern (see his dissenting op. p. 53) over the unsatisfactory result his correct analysis seems to require and my own sense that there must be more to this fully stipulated case than either side chose to present has led me to review the record made by the parties.  My review of the record raises such troubling questions that I am impelled to set them forth, with supporting references to their sources in the record and petitioner's brief, in the face of the views of my colleagues and the courts that judges must refrain from trying to tell respondent how to do his job.  See, e.g., United States v. Payner, 447 U.S. 727, 737-738 (1980).

1.  Why didn't respondent issue statutory notices of deficiency to petitioner's employees who received Endotronics shares as compensation?[1]

---

[1] Petitioner's brief suggests that the employees may not have reported the receipt of the shares as income because the shares were "letter stock" under the Federal securities laws and could not be sold on the public market without a registration statement for a 2-year period following receipt.  The suggestion appears misplaced in two respects:  (1) It was clear at the time the shares were received that letter stock is not subject to a substantial risk of forfeiture under sec. 83(a) and that letter stock restrictions do not postpone the receipt of income, as demonstrated by the cases cited in petitioner's brief, decided prior to the receipt of the shares, see Pledger v. Commissioner, 641 F.2d 287 (5th Cir. 1981); Robinson v. Commissioner, T.C. Memo. 1985-275; Phillippe v. Commissioner, T.C. Memo. 1982-30; Cassetta v. Commissioner, T.C. Memo. 1979-384, see also Robinson v. Commissioner, 82 T.C. 444, 467 (1984) (sec. 83(c)(3) is not in issue here); Horwith v. Commissioner, 71 T.C. 932 (1979); Grant
(continued...)

2.  Why didn't respondent summarily assess employment taxes that petitioner should have withheld and paid over in respect of the Endotronics shares petitioner caused to be paid to its employees as compensation?[2]

3.  Why didn't respondent's statutory notice, rather than asserting, as an alternative to disallowing the compensation deduction claimed by petitioner, that petitioner had "taxable

---

[1](...continued)
v. United States, 15 Cl. Ct. 38 (1988)); (2) Petitioner's chief executive officer, owning 49.95 percent of its stock (the parties have stipulated that he directed and controlled all aspects of petitioner's activities), signed petitioner's return, which claimed the corporate deduction as a miscellaneous deduction for "consulting" and did not report on the officers' salary schedule on p. 2 of the return the compensatory shares received by him and petitioner's other officers, even as petitioner was not reporting on the same return its compensation income on receipt of a much larger number of Endotronics shares and he was not reporting on his own return his personal income on the shares received by him as compensation.

[2] The parties have stipulated that petitioner did not issue W-2 Forms or Forms 1099 disclosing the payments of the compensatory shares to its employees.  It seems likely that petitioner omitted the value of the Endotronics shares from the amounts of compensation paid to its employees from the Forms 941 that it was required to file with respect to employment taxes under subtitle C, chapter 24 of the Code.

In addition, petitioner may well have caused Endotronics, which became controlled by petitioner under the terms of the plan of reorganization approved by the bankruptcy court, not to file a Form 1099 for the 7,650,000 shares that Endotronics issued to petitioner, including the portion of those shares issued, at petitioner's direction, to petitioner's employees, as compensation to petitioner for its commitments to provide management services and necessary financing.  The plan of reorganization discloses that more than 3 months before issuance of the shares petitioner's treasurer had been named chief financial officer of Endotronics.

capital gain" in the same amount as the claimed deduction on petitioner's transfer of the Endotronics stock to petitioner's employees (see majority op. p. 4 note 2), instead determine that petitioner had ordinary income in the same amount as the claimed deduction upon its own receipt of those same shares as compensation?  As indicated by facts in the stipulated record disclosed by the explanation of the next question, that determination would be without regard to whether the deduction claimed by petitioner were allowed or disallowed.

4.  More to the point, why didn't respondent's statutory notice to petitioner include in petitioner's gross income the full stipulated value--$5,976,563--of the total number of 7,650,000 Endotronics shares that petitioner received as compensation?[3]  Included in the stipulated record is the plan of reorganization[4] under which the bankruptcy court approved the

---

[3] The only clue on petitioner's return to its receipt of the 7,650,000 Endotronics shares is that line 22 of the yearend consolidated balance sheet Schedule L shows paid-in or capital surplus of $5,976,563, which did not appear on the corresponding balance sheet for the beginning of the year.  This is the exact fair market value of the 7,650,000 shares that petitioner received on Apr. 4, 1988 (at the stipulated value of $.78125 per share).

[4] The plan of bankruptcy reorganization to which petitioner and Endotronics were parties in the transactional sense did not immunize petitioner's receipt of the Endotronics shares from the recognition of taxable income.  The transaction in which petitioner received the Endotronics shares did not satisfy the definition of a recapitalization reorganization under sec. 368(a)(1)(E) or of an insolvency reorganization defined by sec.
(continued...)

issuance to petitioner of 7,650,000 shares--51 percent of the new

common stock of Endotronics[5]--as consideration for petitioner's

---

⁴(...continued)
368(a)(1)(G) as:

> a transfer by a corporation of all or part of its
> assets to another corporation in a title 11 or similar
> case; but only if, in pursuance of the plan, stock or
> securities of the corporation to which the assets are
> transferred are distributed in a transaction which
> qualifies under section 354, 355, or 356.

An operative requirement of both (E) and (G) reorganizations is
an exchange of stock or securities.  In this case there was no
such exchange.  Petitioner received the stock of Endotronics as
compensation for providing services; petitioner did not transfer
any stock or securities in itself or of any other corporation in
exchange for the Endotronics shares.

[5] The premier treatise on venture capital does not discuss
the factual situation presented by the Venture Funding, Ltd.
acquisition of control of Endotronics.  See Levin, Structuring
Venture Capital, Private Equity, and Entrepreneurial Transactions
(1997), especially ch. 8, Structuring a Turn-Around Investment in
an Overleveraged or Troubled Company.  The role of the venture
capitalist (VC) in the example described in ch. 8, see Levin,
supra at 264-265, is to contribute $8 million in new money to
"Badco" and to receive in exchange (while preexisting creditors
and shareholders are suffering various "haircuts"):

> $7.9 million face of new senior preferred stock,
> mandatorily redeemable 10 years after issuance, plus
>
> 1,000 new common shares (at a stated price of $100 per
> common share, i.e., an aggregate of $0.1 million).
> [Levin, supra, sec. 802.1.1 at 264.]

Under the facts of the example, the new common shares received by
VC (1,000 out of 3,950) amount to 25 percent of Badco's post
restructuring common stock.  It goes without saying that the
exchange of cash by VC for newly issued preferred and common
stock of Badco is a nontaxable transaction to both of them.  No
gain or loss is realized by (much less recognized to), either
party to the transaction, and the only obvious tax question

(continued...)

undertakings to provide Endotronics with management services and necessary financing.[6]

5.  If the 3- and 6-year periods of limitation on assessment have expired on respondent's right to take the actions described in any or all of the foregoing questions, would respondent still have any arguably valid grounds for taking any such actions against petitioner and/or petitioner's controlling person or persons, as might be shown to be appropriate?  Cf. Burke v. Commissioner, 105 T.C. 41 (1995), with Zackim v. Commissioner, 91 T.C. 1001 (1988), revd. 887 F.2d 455 (3d Cir. 1989).

This is a fully stipulated case that was submitted without a trial pursuant to Rule 122, and with only one round of concurrently filed briefs.  Included in the stipulated record, apparently at petitioner's request, is the Debtor's [Endotronics's] Amended Disclosure Statement, which contains the plan of reorganization above referred to.  Petitioner's Proposed

---

[5](...continued)
presented by the example is how the $8 million of consideration is to be allocated between the preferred and common stock.

[6] Petitioner's undertaking to provide necessary financing, as well as management services, would appear to cause the shares allocable to that undertaking to be treated as a commitment fee, included in the gross income of the recipient as compensation for services at the time of accrual or receipt.  See Rev. Rul. 70-540, 1970-2 C.B. 101 (issue 3), declared obsolete on another issue by Rev. Proc. 94-29, 1994-1 C.B. 616, 621; see also Chesapeake Fin. Corp. v. Commissioner, 78 T.C. 869, 879 (1982); Metropolitan Mortgage Fund, Inc. v. Commissioner, 62 T.C. 110, 120 (1974).

Findings of Fact, as set forth in petitioner's brief, are replete with references to the Disclosure Statement and the plan, including the admission (Petitioner's Proposed Finding 75) that petitioner was entitled under the plan to receive 7,650,000 newly issued Endotronics shares.

The majority does not adopt any of petitioner's proposed findings regarding the background and terms of the plan, inasmuch as those findings are irrelevant to the majority's theory of how the case should be decided.  In my view, however, petitioner, by including the Disclosure Statement and plan in the stipulated record, has caused the issues raised in questions 3 and 4 above in effect to be tried by consent.  I believe that the case should not be regarded as fully submitted for decision until the parties have been asked to respond to questions 3 and 4, which appear to me to be ineluctably inherent in the facts of the case as presented by petitioner with respondent's consent.

If respondent on a motion for reconsideration and leave to amend answer should attempt to raise questions 3 and/or 4, and such motion should be denied by the Court on the grounds of lateness or surprise, or for whatever reason, then respondent could try to put question 5 in play, insofar as petitioner is concerned, if respondent should conclude that there are grounds for sending petitioner a second notice of deficiency pursuant to section 6212(c).  See Burke v. Commissioner, supra.

There may be facts not in the record that would belie the inferences that have led me to concur in the majority's result and to raise the foregoing questions.  There may be explanations that would point out errors in my reading of the record and provide answers that would confirm that there's nothing more that respondent can or should do.  It's up to respondent's management, in the exercise of its discretion, to decide whether the questions warrant any inquiry and action at this time.

RUWE, J., dissenting:  The issue in this case is whether petitioner is to be denied a deduction for compensation paid in the form of property.  The property was not subject to risk of forfeiture.  The fair market value of the stock was includible[1] in the employees' income when the transfer occurred.  The transfer meets the deductibility requirements of section 162.  The only possible impediment to the deduction is section 83 and the regulations thereunder.[2]

The applicable statutory language is contained in subsections (a) and (h) of section 83.  Subsection (a) provides that the value of transferred property:

shall be included in the gross income of the person who performed such services in the first taxable year in which the rights of the person having the beneficial interest in such property are transferable or are not subject to a substantial risk of forfeiture * * * [Emphasis added.]

Subsection (h) provides:

---

[1]The words "includible" and "includable" are used interchangeably.  I will use "includible" because that spelling is used consistently by Congress throughout the Code.

[2]Unless otherwise stated, references to the regulations under sec. 83 are to those in effect from 1978 through 1995 and which are applicable to the years in issue.  The current regulations promulgated in 1995 are effective for taxable years ending after Jan. 1, 1995, although they may be used by employers who so choose for any taxable year not closed by the statute of limitations.

(h) Deduction by Employer.--In the case of a transfer of property to which this section applies * * * there shall be allowed as a deduction under section 162, to the person for whom were performed the services in connection with which such property was transferred, an amount equal to <u>the amount included under subsection (a), (b), or (d)(2) in the gross income</u> of the person who performed such services.  Such deduction shall be allowed for the taxable year of such person in which or with which ends the taxable year in which <u>such amount is included in the gross income</u> of the person who performed such services.  [Emphasis added.]

The majority interprets the term "included" as used in section 83 as if it means actually reported on each service provider's income tax return or otherwise used to compute the service provider's income tax liability.[3]  The majority simply describes this as the clear, plain, and unambiguous meaning of the statute.  No precedent is cited.

The word "included" is used three times in subsections (a) and (h) of section 83.  Section 83(a) provides that the value of the property received as compensation for services "shall be included in the gross income" of the recipient.  This means that such property is required to be included in gross income as a matter of law.[4]

---

[3]The alternative to reporting as gross income on the employee's or independent contractor's return would be an adjustment to gross income in a deficiency determination.

[4]In <u>Adair v. Commissioner</u>, T.C. Memo. 1985-392, we stated:

(continued...)

Section 83(h) provides that "there shall be allowed as a deduction under section 162 * * * the amount included under subsection (a)"; i.e., the amount included under subsection (a) as a matter of law. As explained in the Senate Finance Committee report: "The allowable deduction is the amount which the employee is <u>required to recognize</u> as income". S. Rept. 91-552, at 123 (1969), 1969-3 C.B. 423, 502. (Emphasis added.) The next sentence of section 83(h) provides that the employer's deduction "shall be allowed" for the taxable year of the employer that coincides with the taxable year of the person who performed services "in which such amount is included in the gross income" of such person. A natural interpretation of this last phrase, and the one that is consistent with the previous use of the term "included", is that it refers to included in gross income as a matter of law. The majority makes no argument that these three instances wherein the term "included" was used were intended to convey different meanings of that single word. The majority, however, concludes that when Congress used the word "included" it meant something other than "includible" as a matter of law. I disagree.

---

[4](...continued)
Section 83(a) provides that property transferred "in connection with the performance of services" <u>is included</u> in the gross income of the transferee in an amount equal to the excess of the fair market value over the amount paid for the property transferred. * * * [Fn. ref. omitted; emphasis added.]

The Code sections providing that different types of accessions to wealth constitute gross income use various forms of the word "include".  Section 61(a) provides that "gross income means all income from whatever source derived, including (but not limited to) the following items:" and then lists 15 items specifically included in gross income.  Section 61(b) provides: "For items specifically included in gross income, see part II (sec. 71 and following).  For items specifically excluded from gross income, see part III (sec. 101 and following)."  Section 79 uses the same articulation as section 83 in providing that the cost of employees' group-term life insurance "shall be included in the gross income" of employees.  The same is true for reimbursed moving expenses under section 82.  Other Code sections convey the same meaning by different terms such as providing that "gross income includes" alimony (section 71), annuities (section 72), prizes and awards (section 74), and Social Security benefits (section 86).  Section 80(a) provides that the restoration of value of certain securities "shall, except as provided in subsection (b), be included in gross income".  Subsection (b) then provides for reducing "The amount otherwise includible in gross income under subsection (a)" (emphasis added), using the term "includible" to refer to what was previously "included" in gross income.  In another variation, section 88 provides that nuclear decommissioning costs that are built into costs of

services for ratemaking purposes "shall be <u>includible</u> in the gross income of such taxpayer".[5] (Emphasis added.) Obviously, Congress has used the terms "includes", "included", and "includible" interchangeably.

The regulations regarding gross income also use variations of the word "include" to describe items that constitute gross income. Section 1.61-1(a), Income Tax Regs., provides that "Gross income includes income realized in any form, whether in money, property, or services." That regulation goes on to provide:

> (1) For examples of items specifically included in gross income, see part II (section 71 and following), subchapter B, chapter 1 of the Code.
>
> (2) For examples of items specifically excluded from gross income, see part III (section 101 and following), subchapter B, chapter 1 of the Code.
>
> (3) For general rules as to the taxable year for which an item is to be included in gross income, see section 451 and the regulations thereunder. [Sec. 1.61-1(b), Income Tax Regs.]

---

[5]Congress has used the phrase "shall be includible in gross income" as a legal mandate in the following Code sections: 101(f)(3)(B)(ii); 415(b)(10)(C)(ii); 454(c); 457(a), (g); 468A(c)(1); 529(c)(3)(A); 530(d)(1); 704(e)(2); 7702(f)(1)(C); 7702A(e)(1)(C); and 7702B(b)(2)(C), (d)(1). Further, Congress has used the phrase "is includible in the gross income" as a legal mandate in sec. 72(m)(3)(B), and Congress has used the phrase "are includible in gross income" as a legal mandate in sec. 803(a)(3).

Section 1.61-2T(a), Temporary Income Tax Regs., 50 Fed. Reg.
52281, 52285 (Dec. 23, 1985), provides that "gross income
includes compensation for services".  Section 1.61-6(a), Income
Tax Regs., provides:  "Gain realized on the sale or exchange of
property is included in gross income, unless excluded by law."
Section 1.61-9(a), Income Tax Regs., provides:

> Except as otherwise specifically provided, dividends
> are included in gross income under sections 61 and 301.
> For the principal rules with respect to dividends
> <u>includible</u> in gross income, see section 316 and the
> regulations thereunder.  * * *  [Emphasis added.]

Section 1.61-9(b), Income Tax Regs., provides:

> Gross income includes dividends in property other than
> cash, as well as cash dividends.  For amounts to be
> included in gross income when distributions of property
> are made, see section 301 and the regulations
> thereunder.  * * *

The terms "includes", "included", and "includible" in
reference to gross income are used throughout the Code and
regulations and, as the above examples demonstrate, generally
refer to the legal status of an item that constitutes gross
income.  In a Court-reviewed opinion released on February 19,
1998, this Court also used the terms "included" and "includes" in
the same sense when we stated:

> Absent any exclusionary provision, items of income are
> included in gross income.  Sec. 61(a).  Section
> 61(a)(12) includes COD income in gross income.  [<u>Nelson</u>

v. Commissioner, 110 T.C. ___, ___ (1998) (slip op. at 4).]

The majority, relying on the report of the Senate Finance Committee, opines that "included" means "taken into account in determining the tax liability" and is synonymous with the term "recognize". Majority op. pp. 8-9. In footnote 3 on page 9 of the Majority opinion, the majority argues that because section 83(h) uses the term "included" and section 404(a)(5), which was also added by section 321 of the Tax Reform Act of 1969, Pub. L. 91-172, 83 Stat. 487, 588, uses the term "includible", Congress intended different meanings.[6] However, a close analysis of the Senate Finance Committee report indicates that Congress used the two terms interchangeably. The Senate Finance Committee report refers to the deduction under section 83(h) and states:

> The allowable deduction is the amount which the employee is _required to recognize_ as income. The deduction is to be allowed in the employer's accounting period which includes the close of the taxable year in which the employee _recognizes_ the income. * * * [S. Rept. 91-552, _supra_ at 123, 1969-3 C.B. at 502; emphasis added.]

---

[6]Sec. 404(a)(5) provides that contributions to nonexempt plans are deductible in the taxable year in which an amount attributable to the contribution is "includible in the gross income of employees". Sec. 402(b)(1) provides that employer contributions to a nonexempt trust "shall be included in the gross income of the employee in accordance with section 83".

Section 404(a)(5), which uses the term "includible", is then explained by the Senate Finance Committee by using essentially the same terminology:

> The committee provided with respect to nonexempt trusts that the employer will be allowed a deduction for his contribution at the time that the employee recognizes income * * * [S. Rept. 91-552, supra at 123, 1969-3 C.B. at 502; emphasis added.]

The Senate Finance Committee report uses the phrase "required to recognize" to describe the amount of any deduction under section 83(h). Section 83(h) itself describes the amount of the deduction as the "amount included" in the gross income of the employee. The term "recognizes" is used by the Committee to describe the period in which property "is included" in an employee's gross income in section 83(h). The term "recognizes" is also used by the Committee to describe the period in which income "is includible" by the employee in section 404(a)(5). Thus, it is reasonable to conclude that the timing provisions of both sections were intended to refer to the year in which income is required to be "included" or is "includible" in the employee's income.

When Congress wants to require actual reporting of gross income, it knows how to say so. For example, section 1367(b)(1) provides that:

> An amount which is required to be included in the gross income of a shareholder and shown on his return shall be taken into account under subparagraph (A) or (B) of subsection (a)(1) only to the extent such amount is

included in the shareholder's gross income on his
return * * *

Interpreting the word "included" to mean "reported by" or "actually used in computing the tax liability of" any employee or independent contractor would establish a statutory requirement that would be impractical and in many cases impossible for employers to meet. Deductions are a matter of legislative grace, and a taxpayer is required to meet all of the statutory requirements before taking a deduction. Employers would not be able to take a deduction until they first ascertained that their employees and independent contractors had filed an income tax return and reported the item as gross income. How could employers know that employees and independent contractors had actually filed returns and reported the property transfers as income before taking a deduction? Indeed, in many situations the employer's return would be due before the due date of the service providers' returns.[7] Even the majority acknowledges that its interpretation sets up an impractical requirement that the majority believes justifies "employer friendly" regulations that are at variance with the majority's own interpretation of the statutory requirements.

---

[7]Most individual employees file returns on a calendar year basis, in which case their returns are due on April 15. Employers are often corporations filing returns on the basis of a fiscal year. Even those corporations filing returns on a calendar year basis are, absent extensions, required to file returns on March 15. See sec. 6072.

When the applicable regulations interpreting section 83(h)
were issued in 1978, neither the preamble in the Treasury
decision nor the regulations contained anything indicating that
deductibility under section 83(h) depends on an employee or
independent contractor's actually reporting the compensation.  On
July 11, 1978, final regulations were issued dealing with section
83(h).  T.D. 7554, 1978-2 C.B. 71.  The general rule for
deductions under section 83(h) was stated as follows:

> (1) <u>General rule</u>.  In the case of a transfer of
> property in connection with the performance of
> services, or a compensatory cancellation of a nonlapse
> restriction described in section 83(d) and §1.83-5, a
> deduction is allowable under sections 162 or 212, to
> the person for whom such services were performed.  The
> amount of the deduction is equal to the amount
> <u>includible</u> as compensation in the gross income of the
> service provider, under section 83(a), (b), or (d)(2),
> but only to the extent such amount meets the
> requirements of section 162 or 212 and the regulations
> thereunder.  Such deduction shall be allowed only for
> the taxable year of such person in which or with which
> ends the taxable year of the service provider in which
> such amount is <u>includible</u> as compensation.  For
> purposes of this paragraph, any amount excluded from
> gross income under section 79 or section 101(b) or
> subchapter N shall be considered to have been
> <u>includible</u> in gross income.  [Sec. 1.83-6(a)(1), Income
> Tax Regs.; emphasis added.]

The explanation of the difference between these final regulations
and those previously proposed in 1971 was as follows:

> Subject to the requirements of sections 162 and
> 212, a deduction is allowed to the person for whom
> services were performed, in an amount equal to the
> amount of compensation <u>includible</u> in the gross income

of the person who provided the services, at the time the compensation becomes <u>includible</u> in the gross income of the person who performed the services.  This timing rule is a change from the regulations as proposed in 1971, which allowed a deduction at the time an amount was <u>actually included</u> in gross income.  This change was suggested by public comments to the regulations as proposed in 1971.  [T.D. 7554, 1978-2 C.B. at 72-73; emphasis added.]

There is nothing in T.D. 7554, <u>supra</u>, to indicate that these regulatory provisions allowing the deduction "at the time the compensation becomes <u>includible</u>" were intended to be anything other than a proper interpretation of the statutory language of section 83(h).  Nothing in T.D. 7554, <u>supra</u>, describes the use of the word "includible" as a "safe harbor" or an "employer friendly" variance from the statutory requirement.  Indeed, T.D. 7554, <u>supra</u>, states that the U.S. Treasury Department rejected any suggested regulatory language that conflicted with the express statutory language.

Many comments suggested changes that either conflicted with the express statutory language or would have made the regulations unreasonably long and complex.  Those suggestions were rejected.  [<u>Id.</u>, 1978-2 C.B. at 73.]

It is clear that use of the word "includible" in the regulations is used in the sense that the law requires inclusion.  Those regulations remained in effect for 17 years and apply to the years in issue.  I believe that section 1.83-6(a)(1), Income Tax Regs., is a proper interpretation of the requirements of section

83(h).  This interpretation is supported by <u>Duncan Indus., Inc.</u>

<u>v. Commissioner</u>, 73 T.C. 266, 285 (1979), where we stated:

> Section 83(h) expressly allows the person for whom the
> services were performed to deduct an amount equal to
> the amount <u>includable</u> in the service performer's income
> under section 83(a).  * * *  [Emphasis added.]

The majority's interpretation of section 83 conflicts with

the interpretation contained in section 1.83-6(a)(1), Income Tax

Regs.  The majority attempts to reconcile this conflict by

describing the regulations as being an "employer friendly" "safe

harbor".  But such rationalization is only necessary because of

the majority's strained interpretation of the term "included".

If given a choice between two possible interpretations, we should

choose the one that is reasonable and practical rather than

assume that Congress intended to set standards for deductions

that are impractical, if not impossible, to meet.[8]  See <u>United</u>

<u>States v. American Trucking Associations, Inc.</u>, 310 U.S. 534, 543

(1940).  The more reasonable and practical interpretation, and

the one contained in the applicable interpretative regulations,

is that a deduction under section 83(h) is allowed for the

employer's taxable year that coincides with the taxable year in

which the compensation is "includible" in the service provider's

income.

---

[8]Indeed, were we to interpret "included" as meaning
reported, an employer could arguably take the deduction in any
amount for any year that matches the employee's reporting
position.

Section 1.83-6(a)(2), Income Tax Regs., provides a "Special rule" for compensatory transfers of property by "employers" to "employees". It allows a deduction in the employer's taxable year that coincides with the year in which the compensation is "includible" in the employee's income, but "only if the employer deducts and withholds upon such amount in accordance with section 3402." Id. This regulatory requirement that there be withholding has no basis in the statutory language or the legislative history of section 83(h). The majority nevertheless upholds the validity of this withholding requirement by treating it as a relaxation of what it believes to be the more explicit and onerous requirements in the Code. The only basis for this is the majority's restrictive and erroneous interpretation of the word "included".[9]

---

[9]The withholding requirement in sec. 1.83-6(a)(2), Income Tax Regs., is fatally flawed even if one were to accept respondent's definition of "included". Under this regulation, deductibility is totally dependent on whether the employer withheld tax upon the compensatory transfer of property. An obvious example in which the withholding requirement is unworkable involves its application to situations where there are significant restrictions on the employee's rights to the property at the time of transfer such as a substantial risk of forfeiture. In that case, the employee generally receives no includible gross income under sec. 83(a) until those restrictions are lifted. Therefore, there would be no withholding requirement at the time of the initial transfer. Indeed, the amount of any reportable compensation would not be known at the time of transfer. But any withholding that might be required when the restrictions are lifted, possibly years later, may be physically or legally impossible if the employee earned no other compensation in the later year or was no longer an employee. Withholding would also
(continued...)

Finally, even if section 1.83-6(a)(2), Income Tax Regs., is considered valid, section 1.83-6(a)(3), Income Tax Regs., provides an exception to the requirements of section 1.83-6(a)(2), Income Tax Regs. Despite the statutory timing provisions of section 83(h), which are also contained in section 1.83-6(a)(1) and (2), Income Tax Regs., section 1.83-6(a)(3), Income Tax Regs. (hereinafter subparagraph (3)), provides:

> (3) Exceptions. Where property is substantially vested upon transfer, the deduction shall be allowed to such person in accordance with his method of accounting (in conformity with sections 446 and 461). * * *

Pursuant to this exception, when the compensatory transfer consists of property that is substantially vested upon transfer (which is true in the instant case), the explicit timing provisions of section 83(h) and the regulations are not

---

[9](...continued)
be inappropriate if the employee's Form W-4 indicates no withholding was required. Sec. 1.83-6(a)(2), Income Tax Regs., would also disallow a deduction for a compensatory transfer of property to an employee where there was no withholding, even where the employee reported the income and paid the tax. Respondent has acknowledged that "employers that failed to deduct and withhold income tax were denied a deduction even where the employee reported the income and paid the tax." T.D. 8599, 1995-2 C.B. 12, 12. (Emphasis added.) Thus, this part of the regulation was in conflict with respondent's current position that actual reporting is exactly what sec. 83(h) requires.

applicable.[10]  Petitioner's transfers come within the exception

in subparagraph (3).

The majority suggests that the exception in subparagraph (3)

overrides the explicit statutory timing requirements in section

83(h) but does not override the withholding requirements in

section 1.83-6(a)(2), Income Tax Regs.  This is a non sequitur.

Section 1.83-6(a)(2), Income Tax Regs., imposes a withholding

requirement, but only in connection with the application of its

specific timing provisions.  Thus, in the only sentence that has

any application to this case, the regulation provides:

---

[10]Sec. 83(h) requires that any deduction by the service recipient be allowed "for the taxable year of such person [the service recipient or employer] in which or with which ends the taxable year in which such amount is included in the gross income of the person who performed such services."  In light of the explicit timing provisions of sec. 83(h), how can the exception in subparagraph (3) be justified?  The original version of sec. 83 introduced in the House of Representatives contained no provision regarding deductions for property transferred in return for services.  What is now sec. 83(h) was first introduced by the Senate Finance Committee.  The Senate report states:

> The committee provided rules for the employer's deduction for restricted property given to employees as compensation.  The allowable deduction is the amount which the employee is required to recognize as income. * * * [S. Rept. 91-552, at 123 (1969), 1969-3 C.B. 423, 502; emphasis added.]

It is therefore possible that the U.S. Treasury Department concluded that sec. 83(h) was not intended to affect deductions based on the transfers of unrestricted property.

> If the service provider is an employee of the person
> for whom services were performed, such deduction is
> allowed for the taxable year of the employer in which
> or with which ends the taxable year of the employee in
> which such amount is includible as compensation, but
> only if the employer deducts and withholds upon such
> amount in accordance with section 3402. * * * [Sec.
> 1.83-6(a)(2), Income Tax Regs.]

The literal terms of the withholding requirement in the above-quoted regulation apply only where the deduction is allowed for the employer's taxable year in which or with which ends the taxable year in which the compensation is includible in the employees' income; i.e., where the timing rules of section 83(h) apply. The withholding requirement does not purport to apply to other situations, such as where the deduction is allowed in accordance with the employer's own accounting method pursuant to subparagraph (3).

The majority states that the regulations under section 83(h) implement the following three requirements for deductibility: (1) The requirements of sections 162 or 212; (2) the requirements of section 83(h) regarding the amount of the deduction; and (3) the requirements of section 83(h) regarding the timing of the deduction. There is no question in this case that the transfer of property qualifies for deduction under section 162. Deductions under section 162 are not conditioned on withholding. There is also no question in this case regarding the amount of

any potential deduction pursuant to the formula in the statute.[11] As stated in the Senate Finance Committee report: "The allowable deduction is the amount which the employee is <u>required to recognize</u> as income." S. Rept. 91-552, <u>supra</u> at 123, 1969-3 C.B. at 502. (Emphasis added.) As we stated in <u>Duncan Indus., Inc. v. Commissioner</u>, 73 T.C. at 285:

> Section 83(h) expressly allows the person for whom the services were performed to deduct an amount equal to the amount <u>includable</u> in the service performer's income under section 83(a). * * * [Emphasis added.]

The only other requirement concerns timing.[12] The majority argues that subparagraph (3) is only an exception to the statutory timing provision. But that is the only statutory requirement that is conceivably in issue.

We recently addressed the exception contained in subparagraph (3). In <u>Schmidt Baking Co. v. Commissioner</u>, 107 T.C. 271 (1996), the taxpayer-employer's taxable year ended on December 28. The taxpayer deducted vacation and severance pay that it had accrued as of December 28, 1991, on its return for

---

[11]The majority makes no attempt to link the regulatory withholding requirement to the statutory provisions regarding the amount of any deduction and, indeed, there is no linkage.

[12]As stated in <u>Duncan Indus., Inc. v. Commissioner</u>, 73 T.C. 266, 285 (1979):

> Section 83(h) is a modification of section 162 which <u>only</u> affects the time and amount of deductions otherwise allowable, when property is transferred in connection with services. * * * [Emphasis added.]

the year ended December 28, 1991. The taxpayer's employees received unrestricted property representing the accrued vacation and severance pay on March 13, 1992, which was during the employees' calendar year ended December 31, 1992. If the explicit timing provisions of section 83(h) and section 1.83-6(a)(2), Income Tax Regs., applied, the taxpayer would not have been entitled to take the deduction until its taxable year ended December 28, 1993; i.e., the taxpayer's taxable year in which or with which ends the employee's taxable year in which the amount was includible in the employee's income. Nevertheless, based on the exception in subparagraph (3), we allowed the deduction in the year ended December 28, 1991, in accordance with the taxpayer's accrual method of accounting.[13]

The instant case turns on an interpretation of section 83 and the regulations. Legal interpretations should not be driven by the facts of a particular case. While I disagree with the majority's interpretation, I recognize that the operative facts of this particular case raise questions about the "equity" of allowing a corporate deduction for compensation paid to its controlling shareholders and principal officers, who failed to report the same items as income. However, neither respondent nor

---

[13]In Schmidt Baking Co. v. Commissioner, 107 T.C. 271 (1996), the parties had stipulated that the taxpayer-employer had not withheld taxes when it transferred the property on Mar. 13, 1992.

the majority relies on equitable arguments.  In any event, such considerations should play no part in how we interpret statutory and regulatory language.

COHEN, WELLS, BEGHE, CHIECHI, AND GALE, JJ., agree with this dissent.

HALPERN, J., dissenting:  The majority concludes:  "An amount is deductible under section 83(h) in the year that the corresponding income is 'included' in the recipient employee's income, which means to us that the amount is taken into account in determining the tax liability of the employee for that year." The majority explains: (1) "When read in view of the legislative intent for section 83, the text of section 83(h) is unambiguous" and (2) "Given the clarity of this text, our inquiry starts and ends with the statutory text, and we apply the plain and common meaning of that text."  The majority is correct that the word "include" has the plain, common, and unambiguous meaning ascribed to it by the majority:  i.e., "To consider with or place into a group, class, or total".  The American Heritage Dictionary of the English Language 913 (3d ed. 1992).  The question, however, is not whether Congress is skilled in rhetoric, or used the word "included" unambiguously in section 83(h), but what the word "included" means in the context of section 83(h).  The Supreme Court has said:  "Ambiguity is a creature not of definitional possibilities but of statutory context".  Brown v. Gardner, 513 U.S. 115, 117 (1994) (citing King v. St. Vincent's Hosp., 502 U.S. 215, 221 (1991) ("[T]he meaning of statutory language, plain or not, depends on context.")  All of the majority, Judge Ruwe, and Judge Colvin have failed to give sufficient weight to the contextual relationship between the word "included" and the

phrase "in the gross income". Gross income is a legal concept
and not a reporting position. The term "gross income" has the
general definition set forth in section 61(a), and, unless the
word "included" is used in an unusual sense, it is a question of
law whether or not any particular receipt is included or excluded
from gross income. If context is to govern meaning, then,
relying on the "plain and common meaning of that text [sec.
83(h)]", I conclude that the meaning of the phrase "included in
the gross income of the [service provider]" means included as a
matter of law. Nothing in the majority's description of
Congressional purpose for section 83 ("primarily to set forth
rules on the tax treatment of deferred compensation arrangements
known as restricted stock plans)" leads me to believe that
Congress intended the word "included" in section 83(h) to have an
unusual meaning. The majority cites S. Rept. 91-552, 1969-3 C.B.
423 (S. Rept. 91-552 (1969)), wherein it is stated:

> The allowable deduction is the amount which the
> employee is required to recognize as income. The
> deduction is to be allowed in the employer's accounting
> period which includes the close of the taxable year in
> which the employee recognizes the income. * * * [1969-
> C.B. at 502; emphasis added.]

On its face, the language of S. Rept. 91-552 is ambiguous. In
the income tax law, the word "recognize" is a term of art,
connoting a noncognitive act--gain or loss being recognized "to"
a person, not "by" a person. See, e.g., secs. 361(a), 731(a) and

(b), 1245(b)(3).  Nevertheless, the majority has persuaded me that we should proceed as if section 83(h) were ambiguous.[1]

We are not without guidance, however, because we have interpretive regulations, section 1.83-6(a), Income Tax Regs. (section 1.83-6(a)).[2]  Those regulations contain both a general rule, in subparagraph (1) (the general rule), and a special rule, in subparagraph (2) (the special rule).  The general rule is as follows:  "[The section 83(h) deduction] shall be allowed <u>only</u> for the taxable year of such person [the service consumer] in which or with which ends the taxable year of the service provider in which such amount <u>is includible</u> as compensation."  (Emphasis added.)  The general rule applies to <u>all</u> service consumers, whether an employment relationship exists with the service provider or not.  The special rule applies only to service consumers that are employers, and it differs from the general rule only in that it conditions the deduction on withholding.

In <u>Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.</u>, 467 U.S. 837, 842-843 (1984), the Supreme Court stated that, when a Court reviews an agency's construction of a statute that it administers, it is confronted with two questions:

---

[1]    "Ambiguity exists if reasonable persons can find different meanings in a statute".  Black's Law Dictionary 79 (6th ed. 1990)

[2]    References to sec. 1.83-6(a), Income Tax Regs., are to that section prior to amendment by T.D. 8599, 1995-2 C.B. 12 (effective July 19, 1995).

> First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, <u>as well as the agency</u>, must give effect to the unambiguously expressed intent of Congress.[9]
>
> [9] <u>The judiciary</u> is the final authority on issues of statutory construction <u>and must reject administrative constructions which are contrary to clear congressional intent</u>. <u>If a court, employing traditional tools of statutory construction, ascertains that Congress had an intention on the precise question at issue, that intention is the law and must be given effect</u>.

Id. at 842-843 (citations omitted; emphasis added). Second, if section 83(h) is ambiguous, then we must address: "[W]hether the agency's answer is based on a permissible [reasonable] construction of the statute." <u>Id.</u> at 837-838. If section 83(h) is <u>not</u> ambiguous, and carries the must-be-reported meaning ascribed to it by the majority, then the general rule is necessarily invalid because it conditions a deduction only on includability (as a matter of law), and not on reporting. The majority has not considered that consequence in reaching its conclusion about the (lack of) ambiguity in section 83(h). Indeed, the majority has failed to consider whether the general rule even suggests any ambiguity in section 83(h). Perhaps that is because, for the majority, there is no middle ground. If the majority were to conclude that section 83(h) is ambiguous, <u>Chevron U.S.A., Inc.</u> would require the Court to determine if the regulations contain a permissible (reasonable) construction of the statute. Because the general rule is such a construction,

the majority would be obligated to construe "included" in section 83(h) to mean "includable", as the general rule does, and as I would do. That is precisely why the majority is compelled to conclude that the statute is unambiguous despite the fact that it is apparent that reasonable people can find, and, indeed, have found, different meaning within it.

If section 83(h) is ambiguous, as I am prepared to concede, then the general rule is valid as a permissible (reasonable) interpretation of section 83(h) because it implements the expression "included in the gross income [of the service provider]" consistently with a contextual analysis of section 83(h) (taking into account either the language of section 83(h) alone or both that language and the language of S. Rept. 91-552). If section 83(h) is not ambiguous, and is to be construed to mean "included as a matter of law", as I conclude from context, then the general rule is still valid because it is not in conflict with the statute. Whether "included in the gross income" in section 83(h) means "included as a matter of law" either because it is (1) unambiguous or (2) ambiguous and permissibly interpreted by the general rule, the special rule would be invalid because it conditions an employer's deduction on withholding.

WHALEN, J. agrees with this dissent.